ROSS ᴇᴛ ᴀʟ. *v.* MONTGOMERY COUNTY,
MARYLAND, ᴇᴛ ᴀʟ.

[No. 93, September Term, 1968.]

*Decided March 4, 1969.*

The cause was argued before HAMMOND, C. J., and McWIL-
LIAMS, FINAN, SINGLEY and SMITH, JJ.

*John J. Delaney* and *Andrew L. Isaacson,* with whom were
*R. Robert Linowes* and *Linowes & Blocher* on the brief, for
appellants.

*H. Christopher Malone, Assistant County Attorney* and *Al-
fred H. Carter, Deputy County Attorney,* with whom was *David
L. Cahoon, County Attorney,* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for
Montgomery County, sitting in equity, dismissing the appel-
lants' bill of complaint which sought to declare Montgomery
County Zoning Ordinance No. 6-29 null and void and to enjoin
the County from taking any action to prevent construction of
appellants' proposed apartment hotel. The Circuit Court found
that the appellants' building permit had expired and that they
had acquired no vested right to proceed with construction. The
facts upon which the lower court's order was predicated follow :

Appellants, Daniel M. Ross, John J. DiGregorio, and D&R
Partnership, own 23,370 square feet of land located in Mont-
gomery County, Maryland, known as Lots 1, 2, 3 and 16, Roed-
ers second addition, identified as 800 Roeder Road, Silver
Spring, Maryland. It is located in the central business district
of Silver Spring to the rear of the Sheraton Silver Spring Mo-
tor Inn which is a hotel owned by the appellants.

The land was zoned C-2, general commercial, which classi-
fication had authorized apartment hotels as a permitted use
since December, 1953. On February 12, 1965, appellants filed
preliminary plans for a 139 unit apartment hotel and an appli-
cation for a building permit with the Montgomery County De-
partment of Inspection and Licenses.

On January 25, 1966, the Montgomery County Council
(Council) adopted Zoning Ordinance No. 5-146 which amended
the County zoning ordinance to provide a new zoning category
known as the R-CBD Zone for the development of apartment

hotels. Ordinance No. 5-146 limited development of apartment hotels to the R-CBD Zone but it contained a "grandfather clause" to the effect that:

"The provisions of the R-CBD Zone shall become effective immediately upon adoption of this Ordinance, and no apartment hotel shall be built on land zoned other than R-CBD except in the following situation:

"(1) The preliminary plans for a proposed apartment hotel are on file with the Department of Inspection and Licenses on or before the effective date of this Ordinance, provided however, that the final working plans of such proposed apartment hotel accompanied by all of the structural, electrical, plumbing, heating, and any other plans that would be required for the issuance of the building permit are on file with said Department on or before April 25, 1966."

On February 7, 1966, appellants entered into an architectural contract which required that complete working plans for the proposed apartment hotel, sufficient to obtain a building permit, be prepared and submitted to the Department of Inspection and Licenses on or before April 22, 1966. The plans were prepared and filed with the County on April 25, 1966.

On October 28, 1966, six months after the filing of the final plans, the appellants picked up their Building Permit No. 107004 which authorized appellants to construct their proposed apartment hotel. By February, 1967, the appellants had demolished three old houses on the proposed site, had made some test-borings and preliminary engineering studies.

On February 21, 1967, the Council filed, on its own motion, Zoning Application No. E-1011 to amend the zoning ordinance text so as to eliminate the provision in the R-CBD Zone which permitted construction of new apartment hotels in certain zones where final plans were on file with the County on or before April 25, 1966. The proposed amendment reads as follows:

"The provisions of the R-CBD Zone shall become effective immediately upon adoption of this Ordinance and no apartment hotel shall be built on land zoned other than R-CBD."

On or about April 4, 1967, the appellants proceeded to excavate the foundation for their apartment hotel and on April 11, 1967, with the County Building Inspector, whom the appellants had called, present, they poured one footing for the building. Appellants contend that this foundation work was done in order to make it clear that construction had begun in order to retain their building permit which would have been six months old on April 28, 1967.[1]

Also on April 11, 1967, the Council held a public hearing on Zoning Application No. E-1011. Notice of this hearing had been published in two newspapers in March, 1967, as required by law and the date, place, time and purpose of the hearing had been set forth therein.

On April 12, 1967, the day following the public hearing and the pouring of the initial footing, appellants suspended construction of the foundation and filled in the excavation. Nothing more has ever been done under the building permit and since June, 1967, the land has been used for off-street parking for the appellants' nearby motor inn.

On April 18, 1967, the Council took action on its own zoning Application No. E-1011 by adopting Zoning Ordinance No. 6-29. In addition to adopting the language of the ordinance as proposed, the Council added somewhat to the text so that the ordinance reads:

> "The provisions of the R-CBD Zone shall become effective immediately upon adoption of this Ordinance, and no apartment hotel shall be built on land zoned other than R-CBD. No final building permits shall be hereafter issued from and after the effective date of this amendment and that with respect to any final building permits heretofore issued, construction pursuant to said

---

1. Section 79-12 of the Montgomery County Code (1965) provides:
   "Any permit issued shall become invalid if the authorized work is not commenced within six months of the date of issuance or is suspended or abandoned for a period of six months; provided that the Building Inspector may, upon good cause shown, within either of the six months periods, extend a permit for an additional period not exceeding six months."

permits must be undertaken over and beyond the excavation and foundation work within a period of ninety (90) calendar days from the date of this amendment, otherwise the same shall become null and void and the right to use the land for such purpose as an apartment hotel shall terminate."

On July 18, 1967, the appellants' property was inspected and a picture was taken of it being used as a parking lot. By letter, dated July 28, 1967, the County advised appellants that, because of their failure to comply with Ordinance No. 6-29, their building permit issued on October 28, 1966, was null and void.

On July 26, 1967, appellants filed a bill of complaint seeking to declare null and void and enjoin the enforcement of Ordinance No. 6-29. Appellants contended that the ordinance was invalidly adopted and that, by the expenditure of over $56,000.00, mainly for architectural fees, they had acquired vested rights connected with their building permit which entitled them to continue construction of their apartment hotel despite Ordinance No. 6-29. Trial was held in the Circuit Court for Montgomery County, sitting in equity, and on January 26, 1968, Judge Joseph M. Mathias after filing a written opinion issued an order which dismissed appellants' bill of complaint. The lower court was of the opinion that the appellants were not financially in a position to begin construction under the building permit within six months after its issuance and that they did not in good faith commence work under the permit. The work done on April 11, 1967, was held to be merely "window dressing" for the benefit of the County's building inspector and the lower court felt that, by operation of Section 79-12 of the County Code, the building permit became invalid and that appellants had no standing to demand that the County permit the construction of the proposed apartment hotel. The appellants have appealed the order dismissing the bill of complaint.

The appellants present this Court with the same contentions that they advanced before the lower court and they are no more persuasive here than they were there.

We are of the opinion that the decision of the lower court should be affirmed.

Fortunately, the law applicable to the case at bar is less complicated than the facts and considerably less complicated than the appellants would like to have us believe. We adopt the view of the lower court that this case turns on the point of whether or not the building permit obtained on October 28, 1966, expired pursuant to the provisions of Section 79-12 of the Montgomery County Code (1965), which provides that construction must begin within six months of the issuance of a permit, otherwise it becomes invalid. We think the chancellor's finding that the appellants did not, in good faith, begin actual construction under the building permit within a period of six months after its issuance was correct and should not be disturbed.

In support of the finding of the lower court, the record reveals that fourteen months and seventeen days transpired from the time of the filing of the original application for a permit and seventy-eight days elapsed after the execution of the contract for architectural services, before the appellants filed final working plans which were a prerequisite to the issuance of the building permit by the County.

Six months and three days transpired from the filing of the final plans until the appellants picked up their building permit on October 28, 1966. No extensions were ever requested or granted regarding this permit. The first and only work performed under this permit was done on April 11, 1967. The work consisted of a single excavation seven feet by fifteen feet and fourteen feet in depth, and the installation of a single footing, one foot ten inches square, in the southwest, rear corner of Lot 3. There was evidence that this footing cost only $190.81. The footing was covered up the next day and no further progress was ever officially noted until the County withdrew the permit on July 28, 1967, some nine months after its issuance, after noting that the property was being used for a parking lot.

It is not necessary for us to consider the validity of Zoning Ordinance No. 5-146, which limited the development of apartment hotels to the R-CBD Zone, with its "grandfather clause" or that of Zoning Ordinance No. 6-29, which allowed construction under valid and subsisting permits "to be undertaken over and beyond the excavation and foundation work within a period of 90 calendar days from the date of this amendment * * *."

Under the finding of the facts by the chancellor neither of these latter mentioned ordinances come into play and we have already stated our affirmance of his finding.

The appellants have also interposed, as working in their favor, the theory of vested rights. Their contention being that, because of the high price they paid for the land based on its then authorized use for an apartment hotel, their expenditure for architect's fees and the cost incurred in site preparation, the zoning regulations which the County seeks to impose have been rendered inoperative.

In *Mandel v. Bd. of County Comm'rs of Howard County,* 238 Md. 208, 208 A. 2d 710 (1965), a change in zoning regulations was enacted while litigation was pending in respect to the use of the appellants' property under the former zoning regulations. The appellants contended that this violated their constitutional rights. Judge Oppenheimer, writing the opinion for this Court stated:

> "* * * this case is to be determined under the law as it now exists, that the appellants had not secured a final decree establishing their rights to use their properties for the use permitted under the former classification, that they had no vested rights, and that the change in the regulations is not invalid because it eliminates the proposed use." *Id.* at 215.

The Court in *Mandel,* aptly termed the right acquired under the permit as "inchoate" and followed the rationale of this Court in *Yorkdale v. Powell,* 237 Md. 121, 205 A. 2d 269 (1964), wherein Judge Hammond (now Chief Judge), speaking for the Court said:

> "It would seem to follow from the decisions in *Banner, Lake Falls* and *Grau* that an applicant for rezoning to a more intense use of his property, who has been successful before the zoning authorities and the circuit court does not acquire a vested or substantive right which may not be wiped out by legislation which takes effect during the pendency in this Court of the appeal from the sections below." *Id.* at 126.

See also *Marathon Bldrs. v. Montgomery Co.,* 246 Md. 187, 194, 227 A. 2d 755 (1967); *Eutaw Enterprises, Inc. v. Mayor and City Council of Baltimore,* 241 Md. 686, 217 A. 2d 348 (1966).

It is obvious that under the Maryland cases the appellants did not acquire a vested right in an apartment hotel zoning classification and we are likewise of the opinion that they did not obtain any vested right under the building permit which had been issued to them.

It is true that money was expended in anticipation of the construction of the apartment house and incident to the issuance of the permit. However, there was nothing spent in good faith on construction. The cost incurred in the removing of the existing dwelling houses from the property was not for naught, as the property at the time of the withdrawing of the permit was being used for parking lot purposes.

In *Mayor and City Council of Baltimore v. Shapiro,* 187 Md. 623, 51 A. 2d 273 (1947), this Court when confronted with a change in zoning classification after the issuance of a use and occupancy permit, which would have rendered the use, if it existed, a nonconforming use, said:

> "* * * The mere issuance of a permit, where the permittee has not commenced the work or incurred substantial expense on the faith of it, does not create a vested right, or estop the municipal authorities from revoking it. *Board of Com'rs of Anne Arundel County v. Snyder, supra; Geneva Inv. Co. v. St. Louis,* 8 Cir., 87 F. 2d 83, *certiorari* denied 301 U. S. 692, 57 S. Ct. 795, 81 L. Ed. 1348; *Brett v. Building Commissioner of Brookline,* 250 Mass. 73, 145 N. E. 269; and see Note, 138 A. L. R. 500, and cases there cited. After the adoption of the amendment, the issuance of a new permit, for a non-conforming use, would be nugatory and void. *Lipsitz v. Parr,* 164 Md. 222, 164 A. 743." *Id.* at 634-635.

See also *Bogley v. Barber,* 194 Md. 632, 72 A. 2d 17 (1950); *Kahl v. Consolidated Gas, Electric Light & Power Co. of Baltimore,* 191 Md. 249, 60 A. 2d 754 (1948).

In *Anne Arundel County v. Snyder,* 186 Md. 342, 46 A. 2d 689 (1946), the property owner had purchased land, had plans prepared by an architect and spent several thousand dollars in grading and landscaping in preparation for the construction of a boatyard. On November 17, 1944, he applied for a building permit. On November 28, 1944, zoning regulations were adopted which made the intended use a prohibited one. After various stages of litigation this Court was confronted with the question, among others, of the validity of the zoning regulations involved. Judge Henderson writing for the Court said:

> "But it does not follow that the proposed business in the case at bar was established or existing. No permit was issued, *and if it had been it would have conferred no vested right,* nor would it have created an estoppel. *Fitzgerald v. Merard Holding Co.,* 110 Conn. 130, 147 A. 513; *Geneva Inv. Co. v. City of St. Louis,* 8th Cir., 87 F. 2d 83." *Id.* at 347. (Emphasis supplied.)

The lower court cited *Francis v. MacGill,* 196 Md. 77, 75 A. 2d 91 (1950) a case wherein a building permit was issued 21 days before an amendment to the zoning ordinance rendered the use intended a prohibited one. The property owners commenced site preparation and well drilling after the passage of the ordinance under the building permit issued prior to its passage. This Court ruled out the vesting of any rights under the permit stating:

> "It is idle to say that the issuance of the building permit created a vested right that would render inoperative the Zoning Regulations.
>
> 'Adoption of zoning ordinance *ipso facto* revokes permit for construction of building violating zoning restrictions, where no construction has begun.' *Rice v. Van Vranken,* 225 App. Div. 179, 232 N.Y.S. 506." *Id.* at 85.

In *Bogley, supra,* a case where there had been $248.00 spent on architect's fees and an additional sum on the demolition of

an old dwelling, incident to site preparation, Judge Markell speaking for the Court stated:

"* * * In the light of *Board of County Comr's of Anne Arundel County v. Snyder,* 186 Md. 342, 346-347, 46 A. 2d 689, the cases there cited and the authorities in most other jurisdictions, it would be hard to say that mere expenditure for plans, without doing any work on the property itself, created a non-conforming use or any vested constitutional right against rezoning. * * *." *Id.* at 639.

The Maryland cases appear to follow the prevailing principle of law governing such cases, a concise statement of which is to be found in Rathkopf, *The Law of Zoning and Planning,* (3d Ed.) Vol. 2, Ch. 57-6 § 3:

"* * * The majority rule, which can be synthesized from the multitudinous decisions in this area, may be stated as follows: A landowner will be held to have acquired a vested right to continue the construction of a building or structure and to initiate and continue a use despite a restriction contained in an ordinance where, prior to the effective date of the ordinance, in reliance upon a permit theretofore validly issued, he has, in good faith, made a substantial change of position in relation to the land, made substantial expenditures, or has incurred substantial obligations. * * *."

See also McQuillin, *Municipal Corporations,* (3d Ed.) Vol. 8, p. 272.

In the case at bar the only substantial expenditure incurred by the appellants is represented by the architect's fee of $56,000.-00. This is a substantial sum, and some jurisdictions have held that substantial sums spent for planning under a valid and subsisting permit, give rise to a vested right in the property owner. *Tremarco Corp. v. Garzio,* 32 N. J. 448, 161 A. 2d 241 (1960), Cf. *Morris v. Postma,* 41 N. J. 354, 196 A. 2d 792 (1964). See also Rathkopf, *The Law of Zoning and Planning,* (3d Ed.) Vol. 2, Ch. 57 and cases cited therein.

In reaching our conclusion in this case, although we are aware

that a substantial sum has been spent on planning, we are mindful that this is not a situation where a valid and subsisting permit has been revoked by operation of an ordinance which effected a rezoning repugnant to the use for which the permit had been issued. In the case at bar, the permit, which the planning was intended to complement, expired for want of performance, and with that expiration any vested right, which may have existed, became forfeit.

*Order dismissing bill of complaint affirmed, appellants to pay costs.*