SHAPIRO ET AL. *v.* MONTGOMERY COUNTY COUNCIL
ET AL.

[No. 317, September Term, 1972.]

*Decided June 25, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*C. Edward Nicholson* for appellants.

*John D. Aldock,* with whom were *Shea & Gardner* and *Donald S. Burris* on the brief, for Charles E. Christ et al., part of appellees. *Stephen Z. Kaufman, Assistant County*

*Attorney,* with whom were *Richard S. McKernon, County Attorney, Alfred H. Carter, Deputy County Attorney,* and *Robert C. Park, Jr., Assistant County Attorney,* on the brief, for Montgomery County Council, other appellee.

BARNES, J., delivered the opinion of the Court.

On June 6, 1972, the Montgomery County Council, sitting as the District Council, rejected the application of the appellants (J. B. and Maurice C. Shapiro) to rezone 6.51 acres of land from R-R (Rural Residential — One-family residence for every 20,000 square feet) to R-30 (Multiple-family, low density residential — 14.5 units an acre). The appellants' appeal to the Circuit Court for Montgomery County (Moore, J.) was dismissed by an order of October 17, 1972. This appeal from that order raises two questions:

(1) Did the lower court and the District Council err in finding that the appellants had not met their burden of proof in establishing that there had been such a substantial change in the character of the neighborhood as would justify a rezoning under the Maryland "change-mistake" rule, and

(2) In any event, was there sufficient evidence to justify a denial of the proposed rezoning as not being in the public interest because of school overcrowding?

The subject property is located in the southwest quadrant of new Maryland Route 28 and Rockville-Norbeck Road near Rockville, Montgomery County. This heavily wooded tract has been zoned R-R since the most recent comprehensive zoning in 1958. The land immediately northwest of the subject property is included within Rock Creek Park. The hearing examiner, Arthur S. Drea, Jr., who considered the application for rezoning, outlined the applicable "neighborhood" and summarized the surrounding land uses as "dominated by single-family residential zoning with some multi-family residential zoning and local commercial immediately adjacent to the subject property." The District Council adopted the findings of the hearing examiner that there had not been a sufficient change in the character of the

neighborhood to justify the reclassification and was not in the public interest because of resulting overcrowding of two schools. It denied the application.

A review of the appellants' prior attempt to have the property rezoned serves as a background to the present appeal. All of the rezoning changes in the vicinity of the subject property (since the last comprehensive rezoning in 1958) occurred on December 28, 1965, when the District Council granted three rezoning applications for the C-1 (Convenience Commercial), R-20 (Multiple-family, medium density residential) and R-30 zones, respectively. On May 25, 1966, the appellants in the present case filed their first application to rezone the subject property from the R-R zone to C-1 or R-20. In the proceedings in regard to the 1966 application, the hearing examiner, Charles G. Dalrymple, recommended denial of that application, stating that, with the exception of the rezoned property, the general area was overwhelmingly devoted to single-family residential uses. With reference to that rezoning already approved in the vicinity of the subject property, the hearing examiner noted:

"The granting of these applications introduced an element of change in the character of the immediate vicinity, but there is no discernible pattern created by these changes on which to base future land uses around these properties. Application No. E-401 provided for 9 acres of C-1 zoned land to satisfy a need for a neighborhood shopping center in this vicinity. Application Nos. E-402 and E-403 granted multi-family uses to provide an element of variety and to break the monotony of single-family development and at the same time provide a transition between the newly created commercial zone on the north and the established single-family residential uses on the south. The subject property is buffered from the existing C-1 zoned land by the existing R-20 zoned land thus providing an identical transition of land uses to the west as was created to the south, i.e. C-1, multi-family, single-family."

The District Council adopted Mr. Dalrymple's findings and recommendation and in its opinion of August 6, 1968, stated, in part:

"When the commercial and multi-family zones were granted on the south side of Norbeck Road, the District Council was fulfilling a need for a neighborhood shopping center and at the same time introducing a variety of land development to break up the 'rather monotonous spread of single-family development.' The Council agrees with the Examiner that these previous reclassifications in no way justify the reclassifications here requested. The area remains predominantly single-family residential and the public interest demands that the intensification brought about by the granting of C-1 or R-20 zoning of the subject property be prohibited."

No appeal was taken from the 1968 action of the District Council denying the application to rezone the subject property to the C-1 and the R-20 zones.

The appellants waited until May 17, 1971, to file the present application to rezone the subject property from the R-R zone to the R-30 zone. In the interim period, a new Master Plan had been approved and adopted — the Aspen Hill and Vicinity Master Plan — which indicated an R-30 zoning classification for the property.

The Technical Staff recommended approval of the R-30 zoning, as indicated on the Master Plan, stating that the subject property had "already been studied in great detail as to its proper land use in reviewing previous requests for rezoning as well as in the preparation of the new Master Plan . . . ." The Planning Board, however, by a two to one vote (two of the five members being absent) rejected the recommendation of the Technical Staff. The majority apparently thought that the school facilities were inadequate to care for the additional school population which would result from the requested rezoning and that the Master Plan was "developing faster than the public facilities

are able to keep pace." The dissenting member of the Planning Board was of the opinion that the indication in the Master Plan — which "was hardly dry from the printers" — should be supported and effectuated.

The present application then came before Mr. Drea as the hearing examiner and substantial evidence was taken at two hearings — one, October 20, 1971; the other, on December 6, 1971. The protestants (appellees here) at the October 20 hearing presented four witnesses in opposition to the granting of the application. They were property owners in the vicinity of the subject property and no challenge to their standing is made. Their principal objections to the granting of the application were the detrimental effect upon the value and enjoyment of the predominantly residential character of the neighborhood, an increase in dangers from an already bad traffic problem and additional overcrowding of the schools in the area. One witness for the protestants was William Jensen, a member of the Bar and a hearing examiner with the Federal Power Commission, who lived very near the subject property. He had been counsel for the protestants in the 1968 rezoning attempt and testified that the District Council in denying that application had taken into account the three rezonings approved on December 28, 1965. As mentioned above, the District Council concluded in that case that there had not been a substantial change in the character of the neighborhood to justify the requested rezoning and that the previous reclassifications did not justify further reclassifications in the area.

At the second hearing on December 6, 1971, the applicants presented the testimony of two experts, Page F. Hopkins, a qualified planning consultant, and Samuel Novak, a qualified architect. Mr. Hopkins indicated that there were no traffic problems, school problems or other hazards which would result from the granting of the application. Mr. Novak described and explained the schematic plan for the development of the property under the proposed R-30 zoning.

Mr. Drea, the hearing examiner, filed his comprehensive and carefully considered Report and Recommendation to the District Council on March 21, 1972. In his report, the hearing

examiner concluded that there would be no substantial increase in any traffic hazard and, in regard to its effect upon schools, stated the proposed rezoning would:

". . . have no adverse effect whatever on the North Lake Elementary School but will have an adverse effect upon both the Earle B. Wood Junior High School [increase of 11 students] and the Robert Peary Senior High School [increase of 10 students].

"In my opinion, the granting of the subject application would not have an adverse effect upon the public interest except that it would add to the already overcrowded conditions of two schools in the vicinity and to this extent alone the granting of the subject application is not in the public interest."

His principal ground for recommending disapproval of the application, however, was that under the change-mistake rule, there had been no evidence sufficient to establish a substantial change in conditions in the neighborhood of the subject property to permit a recommendation for ·the proposed rezoning (there being no contention that there had been a mistake in the original zoning).

The District Council on June 6, 1972, agreed with the findings and conclusions of the hearing examiner. It stated, in part, in its opinion:

"In the subject application we adopt the Hearing Examiner's conclusion that there have not been any significant changes in the character of the neighborhood subsequent to August of 1968. Therefore, it is our opinion that the subject application cannot be granted.

"Although the Technical Staff of the Maryland-National Capital Park and Planning Commission has recommended the approval of the subject application, the Planning Board has recommended that the application be denied. We agree with the Hearing Examiner and the Planning Board that the granting of the subject application

would result in further overcrowding of two public schools which would serve the property. To this extent, the subject application is not in the public interest.

"For these reasons and because to deny this application will aid in the accomplishment of a coordinated, comprehensive, adjusted and systematic development of the Maryland-Washington Regional District, the application will be denied."

On appeal to the lower court, Judge Moore, after a review of the prior proceedings and of our prior decisions dismissed the appeal of the applicants, principally upon the ground that the "stern" Maryland law as enunciated by us in the change-mistake rule, in a sense, tied the hands of the hearing examiner so that the proposed rezoning could not be recommended by him or granted by the District Council. We have concluded that Judge Moore's order of October 17, 1972, dismissing the applicants' appeal must be affirmed.

(1)

The appellees contend that the appellants have not met the heavy burden upon them to establish a substantial change in the character of the neighborhood since the earlier denial of rezoning in 1968, relying upon our decisions in *Brown v. Wimpress*, 250 Md. 200, 242 A. 2d 157 (1968); *Lambert v. Seabold*, 246 Md. 562, 229 A. 2d 116 (1967); *Polinger v. Briefs*, 244 Md. 538, 224 A. 2d 460 (1966); and *Woodlawn Area Citizens Association v. Board of County Commissioners for Prince George's County*, 241 Md. 187, 216 A. 2d 149 (1966). They also point out that although indications of proper zoning in a Master Plan are to be considered by the legislative body, they are not controlling upon that body, relying upon *Aspen Hill Venture v. Montgomery County*, 265 Md. 303, 289 A. 2d 303 (1972); *Montgomery v. Board of County Commissioners for Prince George's County*, 263 Md. 1, 280 A. 2d 901 (1971); and *Chapman v. Montgomery County*, 259 Md. 641, 271 A. 2d 156 (1970).

On the other hand, the appellants contend, with much force and plausibility, that the present case is distinguishable from the holdings in our prior decisions in that the factual basis for the 1968 denial has changed substantially. They argue that at the time of the 1968 request, the three rezonings in the neighborhood were only "paper" zones which had not yet been effectuated by construction and actual use, whereas now, those "paper" rezonings have become realities by the development of the three properties. This factor, they contend, has resulted in a substantial change in the character of the neighborhood of the subject property and see some support for their position in our opinions in *Montgomery County v. Pleasants,* 266 Md. 462, 295 A. 2d 216 (1972) and in *Messenger v. Board of County Commissioners for Prince George's County,* 259 Md. 693, 271 A. 2d 166 (1970). They reason that under the circumstances of the instant case, there would be no "impermissible change of mind" condemned by our prior decisions.

Even if we assume, *arguendo*—but without deciding — that the appellants are correct in their contention, our prior decisions are clearly to the effect that although a substantial change in conditions in the neighborhood may *justify* the granting of a rezoning application by the legislative body, it does not *require* that body to grant the application unless such a refusal is not fairly debatable and thus arbitrary, unreasonable and capricious. *Aspen Hill Venture, supra* and cases cited therein. Alas, the appellants have not been able to surmount this second hurdle because, in our opinion, there was sufficient evidence before the District Council to make its refusal to grant the application fairly debatable, and hence its action was not arbitrary, unreasonable and capricious.

(2)

As we have already indicated, both the hearing examiner and the District Council found that the granting of the application would not be in the public interest because it would result in the overcrowding of two schools in the

neighborhood. We have already quoted from the Report and Recommendation of the hearing examiner in regard to overcrowding of the Earle B. Wood Junior High School (11 additional students) and the Robert E. Peary Senior High School (10 additional students). It is true, as the appellants point out, that the School Board was of the opinion that the overcrowding could be accommodated at the Robert E. Peary High School "over the long range," but the appellees observed that this somewhat elusive phrase must mean *sometime after the fiscal year 1975* inasmuch as the figures submitted by the Board of Education indicate that the Earle B. Wood Junior High School and the Robert E. Peary Senior High School were expected to be in excess of their capacities beyond 1975. The appellants argue that, taking all of the figures together, there would only be a net increase of eight pupils, but they are met with our observations in *Malmar Associates v. Board of County Commissioners for Prince George's County*, 260 Md. 292, 307, 272 A. 2d 6, 14 (1971):

> "Even nine additional students in an overcrowded school situation may well be sufficient to support the District Council's conclusion inasmuch as the line must be drawn at some point; and if the cup is already completely full, even one additional drop will make it overflow."

There was, in our opinion, sufficient evidence to support the recommended denial of the rezoning by the hearing examiner and by the Planning Board because of the resulting overcrowding of the two schools and by the District Council in accepting the recommendation.

As we stated in *Eger v. Stone,* 253 Md. 533, 542, 253 A. 2d 372, 377 (1969):

> "We have made it quite clear that if the issue before the administrative body is 'fairly debatable' . . . the courts will not substitute their judgment for that of the administrative body. . . ."

> "This rule will be adhered to even if we were of the opinion that the administrative body came to a

conclusion we probably would not have reached on the evidence."

*Order of October 17, 1972, affirmed, the appellants to pay the costs.*