# PEMBERTON *v.* MONTGOMERY COUNTY, MARYLAND ET AL.

[No. 205, September Term, 1974.]

*Decided June 27, 1975.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE and O'DONNELL, JJ.

*Roger C. Ohlrich,* with whom was *William S. Green* on the brief, for appellant.

*Lewis A. Noonberg,* with whom were *Paul V. Niemeyer, Piper & Marbury* and *Ralph R. Roach* on the brief, for Exxon Corporation, part of appellees. *Stephen J. Orens, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney, Alfred H. Carter, Deputy County Attorney,* and *Kenneth B. Tecler, Assistant County Attorney,* on the brief, for Montgomery County, Maryland, other appellee.

DIGGES, J., delivered the opinion of the Court.

After visiting and revisiting various administrative and judicial tribunals for almost six years,[1] the instant case has

---

1. For an inordinate amount of time, this matter bounced, as if on a pogo stick, between the County Board of Appeals (where personnel was constantly changing throughout this controversy) and the Circuit Court for Montgomery County. During this period there were numerous, protracted

at last arrived in this Court for what we trust will be its final resolution. What is before us in this matter is an appeal from an order of the Circuit Court for Montgomery County (Mitchell, J.) which affirmed, in favor of Montgomery County and the Exxon Corporation,[2] the appellees, over the objection of Mrs. Oakland H. Pemberton, the appellant, the decision of the County Board of Appeals for Montgomery County to permit, under a special exception, the operation of a gasoline station. We will affirm that order.

Although on the surface deceptively calm, it is in the period which preceded this stormy and prolonged sparring before the Board and the circuit court that the seeds of this dispute were sown. Specifically, this tale, for the purpose of resolving the issue in this case, begins in August of 1968 at which time Exxon agreed to buy a parcel of land situated in Brookmont, Montgomery County, Maryland. A condition of the consummation of that purchase — obtention of a special exception from the Montgomery County Board of Appeals enabling Exxon to erect and operate a filling station on that site, 6100-6104 MacArthur Boulevard — was realized on 20 August 1968. The opinion of the Board adopted as its resolution granting that special exception, later amended,[3]

---

and sometimes repetitive hearings conducted in an effort to finally decide this dispute. One of the Board members recognized this, as is indicated in the comment which prefaced his opinion:

> "The history of this special exception to construct and operate a gasoline filling station reads like a chronological jigsaw puzzle with over thirty dates relating to significant actions taken by either Exxon, the Civic League of Brookmont and Mrs. Oakland Pemberton, the Montgomery County Board of Appeals, the Department of Inspection and Licenses, and/or the Circuit Court for Montgomery County."

2. At the outset of this litigation Exxon's corporate name was the Humble Oil & Refining Company. Because by name change Exxon is its present corporate appellation we will refer to that appellee as such throughout all stages of this litigation even though during the earlier periods Humble was the denomination utilized.

3. The Board amended the special exception at its meeting on 5 September 1968, adding the condition that public water and sewer be available prior to the commencement of use, but this action was not entered upon the minute book of the Board until 10 September 1968. Exxon argues that the twelve-month special exception period should begin to run from 10 September rather than from 20 August by analogizing to judicial procedure

"permit[ted] the construction and operation of an automobile filling station," provided several preconditions were met. In addition to these enumerated preconditions, the special exception contained a notation that Exxon had to comply with the time limitation dictate of Montgomery County Code (1955) § 111-32 (c).[4] That section, whose application forms the vortex of this litigation, provides:

> "A decision of the board or the director permitting the erection or alteration of a building shall be valid for a period of twelve months, during which time a building permit for such erection or alteration must be obtained and the erection or alteration started. No decision of the board permitting the use of a building or land shall be valid for a period longer than twelve months, unless such use is established within such period; provided, that where such use is dependent upon the erection or alteration of a building, such order shall continue in force and effect if a building permit for such erection or alteration is obtained and the erection or alteration started within such period, and such erection or alteration completed and the permitted use established within a reasonable time thereafter."

Having received this administrative green light on 20 August 1968, Exxon promptly put its project into gear: plot plan and construction drawings for the service station were prepared; test borings were made; sewer service was established; and two old frame buildings on the property

---

(citing Kennedy v. Foley, Receiver, 240 Md. 615, 214 A. 2d 815 (1965)) specifically the fact that "where a judgment is amended in a material and substantive respect, the time for which an appeal from such determination may be taken runs from the date of the amendment." Although it may well be that there is merit in this contention, we need not resolve it because, even deciding this issue in favor of the appellant, the outcome of this case remains the same.

4. Section 111-32 (c) has been recodified and is now Montgomery County Code (1972) § 59-6 (c). References in this opinion will be to the 1965 codification, which was the one in effect during the twelve-month period pertinent to this case.

were razed, their foundations unearthed and the debris removed. However, it was not until 19 August 1969, one day before the end of the twelve-month period stretching from the original granting of the special exception, that, all on the same day, Exxon: obtained a building permit for the construction of a retaining wall; dug a trench with a backhoe on the southeast side of the property; and then, after installing horizontal steel rods for support, poured five to six yards of concrete into the excavation for footings.

It has been the appellant's contention, from the time of her initial participation in this matter in October of 1969 until now, that Exxon should not be permitted to use the property for a service station since the special exception issued to that company expired because: (i) Exxon did not "obtain a permit for the construction of a gasoline filling station within twelve months after the grant of a special exception"; (ii) "the construction of a footing for a retaining wall" was not "sufficient to satisfy the requirement of section 111-32 (c) . . . that erection under a special exception be started within the twelve months following the grant of that exception"; and (iii) even if, in the normal case, obtaining the retaining wall permit and beginning work on the wall would satisfy the commencement requirement, "Exxon's work on August 19, 1969 was not a bona fide attempt to begin construction of a footing for a retaining wall." [5] Since these three questions, which are either clearly factual or at least mixed questions of law and fact, have been answered at the administrative level prior to this matter reaching the courts, our function, as was also true of the circuit court, is not to substitute our assessment of the facts for those of the Board as they relate to these issues, but merely to evaluate whether the evidence before the Board was "fairly debatable" such that a reasoning mind could reasonably have reached

5. Besides answering these contentions of the appellant, at least one of the appellees defends by raising these additional issues: the appellant lacks standing, the appellant was untimely in her appeal, the case is moot, denial of use at this point would be an unconstitutional taking, and relief should be denied under equitable doctrines. However, because of the basis upon which we decide this case it becomes unnecessary to consider these questions.

the same result as did the administrative agency upon a fair consideration of the factual picture painted by the entire record before that body. *Dept. of Nat. Res. v. Linchester*, 274 Md. 211, 334 A. 2d 514 (1975); *American Oil Co. v. Bd. of Appeals*, 270 Md. 301, 310 A. 2d 796 (1973); *Shapiro v. Montgomery Co. Council*, 269 Md. 380, 306 A. 2d 253 (1973); *Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 236 A. 2d 282 (1967); *Agneslane, Inc. v. Lucas*, 247 Md. 612, 233 A. 2d 757 (1967). Utilizing this standard we now evaluate the appellant's three contentions.

(i)

It is the appellant's first contention that the building permit obtained on 19 August 1969 to construct a retaining wall did not comply with section 111-32 (c) because "that ordinance states explicitly that a permit for *such* erection must be obtained [and] clearly 'such erection' must refer back to the language 'where such use is dependent upon the erection . . . of a building,' and the permit must therefore be the permit for the erection of the building in question [and not one merely for a retaining wall]."

But, by way of answering this assertion, "a building permit" does not necessarily translate into a permit only for a building as such. Indeed, if a "building permit" for a swimming pool project, for instance, were required, the needed permit could be for the pool itself and not necessarily for a bathhouse building being erected nearby. And so, in this case, a "building permit" allowing commencement of a service station project can be a permit for the construction of a portion of that project such as the foundation or retaining wall and it is therefore not limited, as the appellant insists, to a permit for the erection of a building; a gasoline station is, after all, probably more vitally comprised of the pumps and the underground storage tanks.

Furthermore, in the Board's view, "the retaining wall was an indispensable part of the support of the gasoline station building made necessary because the site slopes sharply to the rear of the lot," and, therefore, the retaining wall permit was part and parcel of the permit for building the station, it

being inextricably connected to that erection. The Board reasoned:

> "Since every building must begin with a foundation, common sense indicates that obtaining a permit to begin where one must begin, *i.e.*, with a foundation, is sufficient to satisfy the requirements of Section 111-32. The applicant [(Exxon)] would have had to start construction with the foundation regardless of the kind of building permit first obtained. A foundation permit is a building permit, since it is sufficient to allow the start of construction under the provisions of the code and under the practices of the office of Building Inspector and the construction industry."

This finding by the Board, as to the existence of a construction permit within the requisite twelve-month period, is based upon a foundation of evidence which is at least "fairly debatable," and, therefore, we cannot disturb it.

### (ii)

The appellant's next argument is that the work which was performed before and on 19 August 1969 was not a sufficient construction effort to be considered commencement of the station for purposes of satisfying the requirement of section 111-32 (c). In support of this, Mrs. Pemberton asserts that the work which Exxon had accomplished by that date was merely preliminary and preparatory to actual construction of the service station and was thus not sufficient to qualify as the commencement of work on that project. In making this statement she relies on two of this Court's previous decisions which may be characterized as "commencement cases": *People's Counsel v. Pub. Serv. Comm'n,* 259 Md. 409, 270 A. 2d 105 (1970); *Ross v. Montgomery County,* 252 Md. 497, 250 A. 2d 635 (1969).

Neither of these cases can, however, give the appellant solace, as they are readily distinguishable on their facts from this action. The standard for determining

commencement of construction (the development of which originated with *Kelly v. Rosenstock*, 45 Md. 389 (1876)), utilized by this Court in both *People's Counsel* and *Ross*, was laconically expressed by Judge Horney for this Court, in *Rupp v. Earl H. Cline & Sons*, 230 Md. 573, 188 A. 2d 146 (1963), as follows:

> "before there can be the *commencement of a building* [or another project] . . . there must be (i) a manifest commencement of some work or labor on the ground which every one can readily see and recognize as the commencement [of the undertaking] . . . and (ii) the work done must have been begun with the intention and purpose then formed to continue the work until the completion of the building [or other endeavor]." *Id.* at 578.

In *People's Counsel*, a case involving the construction of the Calvert Cliffs Nuclear Power Plant located on the Chesapeake Bay in Calvert County, this Court concluded, applying the first prong of the *Rupp* test, that the work performed on the project prior to enactment of Article 78, § 54A of the Maryland Code (1957, 1965 Repl. Vol., 1968 Cum. Supp.) — extensive excavation preparatory to the building of the foundation — was not a commencement of construction "of the generating station" under the above-cited statute involved in that case, so as to deprive the Public Service Commission of jurisdiction over the plant and to exempt the builder, the Baltimore Gas and Electric Company, under the grandfather clause provided for in section 54A, from having to first obtain a certificate of public necessity and convenience from that administrative agency before it could proceed with its construction plans. Aside from the fact that an entirely different statute passed for an entirely different purpose may provide a sufficient reason to prevent this case from being controlled by *People's Counsel*, even accepting that the mandates of the commencement provisions of the statutes are similar, the cases are clearly distinguishable on their facts. What factually differentiates the two cases is that in *People's*

*Counsel* all that was accomplished was the moving of earth — no materials, such as cement, had been applied, and, furthermore, none had even been brought to the construction site — while here not only was a trench excavated for an essential part of the foundation but five to six yards of concrete had been poured after steel rod reinforcements had been put in place — clearly the commencement of the actual building of the project. In fact, although we do not need to go this far here, it is conceivable that in situations such as the present one, under zoning-permit statutes, the excavation without more may be a sufficient indicia of work to be considered the commencement of construction.

Likewise the *Ross* case gives no buoyancy to the appellant's contention. That case, after taking note of the fact that the contractor had dug for a footing and then poured concrete into that excavation, nevertheless found the construction not to have been commenced so as to qualify, within the time limitations, for a special exception. The rationale utilized in *Ross* for this conclusion, was in effect the application of the second phase of the *Rupp* test, in that the efforts, characterized there as "window dressing," did not demonstrate the requisite intent to continue construction. This was shown to be so in light of subsequent events, especially the evidence that construction stopped after the commencement deadline, the property was then used as a parking lot and the builders were not financially in the position to continue. The instant case is comparable to the *Ross* case, but only to the limited extent that the same type of work was performed, *i.e.*, excavation and construction of footings; after that similarity the two cases part company, especially in regard to the all important continuation-of-effort element set out in *Rupp*. Indeed, it cannot earnestly be argued that Exxon was without funds to proceed with work on the station, and the evidence, furthermore, clearly shows that Exxon consistently worked on the project and finished it on 9 June 1971, at a total cost in excess $230,000. The Board specifically found that: "the subsequent satisfactory completion of the project indicated

that it [(Exxon)] did indeed intend to go forward with construction which it began on August 19, 1969."

Based on the record which contains ample evidence of digging and cement work on the retaining wall foundation, if not for the foundation of the building itself, of this gasoline station project before the twelve-month deadline, as well as evidence of a clear manifestation of the consistent intent by Exxon to continue (which intent is concretized in that the construction was followed through to completion), we find the Board's decision in this regard to be based on evidence that is at least "fairly debatable."

(iii)

Finally and in the alternative, the appellant argues that, even if the permit was obtained and commencement attained, this alleged start was not a bona fide beginning of the service station since it was done at the last minute, in the pouring rain, and "all work done on that [19 August] day was not only not used, but was completely obliterated!"

It is of little moment, we conclude, that the work was done on the day before the special exception lapsed; as, when the law establishes a period within which something is to be achieved, it is deemed to be just as accomplished whether it be performed on the first day or the last.

Similarly, the fact that it rained while work was being pursued on 19 August does not, of itself, assist the appellant's claim that the acts alleged to be the commencement of construction were not a good faith start but merely "window dressing" any more than if she had shown that it was snowing or that it was the sunniest day of the year. In fact, it is conceivable that a reasonable person could conclude that the worse the weather the less need be accomplished in order for that work to be deemed sufficient to constitute the commencement of construction.

The third leg upon which appellant is balancing her assertion of no bona fide commencement, is that, according to her evidence, the foundation built on 19 August was eventually destroyed before the existing retaining wall was finished. While there are indications in the record which

support this accusation, there is also evidence that at least part of what was done on that day was preserved in the finished product, so that the Board's finding that "a footing for a portion of the foundation [of the building] was laid August 19, 1969," was reached after consideration of evidence which is "fairly debatable"; thus this finding must be sustained by this Court on appeal. But even if the assertion that the 19 August work was totally destroyed were conclusively supported by the record, the mere fact that the contractor obliterated what it had originally built does not, of itself, affect the commencement date. The law would indeed place builders in a double bind if it forced them to choose between (1) dismantling a defective part of the construction, only to risk the loss of a special exception permit, and (2) preserving the special exception, but in doing that be compelled to retain some section of the construction which they have discovered to be defective or outmoded. This is a dilemma so extravagant that its mere statement demonstrates its undesirability.

In sum, the aspects of the 19 August commencement upon which the appellant relies do not, either individually or collectively, indicate that the work was not performed in good faith. Chief Judge McSherry's observation for this Court, in *Berry v. Safe Deposit Co.*, 96 Md. 45, 56, 53 A. 720 (1902), is therefore applicable to the three factors which constitute the third prong of the appellant's case:

> "The sum of any number of zeros will always be zero, and this is true in the law of evidence as well as in arithmetic. You may combine as many independent circumstances as you please, and if no one of them has any legal tendency to establish the fact to be proved then all of them taken together can have no greater probative value."

Finding no error in the circuit court's order, which upheld the Board's findings, we will accordingly affirm it.

> *Order of the Circuit Court for*
> *Montgomery County affirmed.*
> *Costs to be paid by appellant.*