Dear Honorable Ronald C. Dillon, The Honorable Cathleen M. Vitale,
You have asked for our opinion concerning legislation pending before the Anne Arundel County Council that would allow County officials to enter into local development rights and responsibilities agreements, as authorized by Annotated Code of Maryland, Article 66B, § 13.01. In particular, you have asked the following four questions:
1. May a chartered county that derives its powers from Article 25A of the Annotated Code of Maryland adopt legislation that creates a planning commission of the type authorized by § 3.01 of Article 66B (which does not apply to chartered counties)?
2. If the answer to question 1 above is "yes," can that planning commission exercise the review powers of a planning commission under Article 66B, § 13.01, concerning development rights and responsibilities agreements?
3. Does the failure of the bill pending in the Anne Arundel County Council to provide for review of proposed development rights and responsibilities agreements by a County planning commission render the bill inconsistent with State law?
4. Does the bill's requirement that a developer's concept plan include a proposed development rights and responsibilities agreement render the bill inconsistent with the voluntary petition process in Article 66B, § 13.01?
You provided two legal memoranda by the County Attorney responding to various questions about the proposed legislation, including three of the four questions above.
We answer your questions as follows:
1. An ordinance creating a planning commission in the County must be consistent with the County Charter, which currently implements the County's authority over planning and zoning by assigning various functions to the Office of Planning and Zoning, the Planning Advisory Board, and the County Council. The County Attorney has stated that legislation establishing the type of planning commission you describe would be inconsistent with the Charter, unless the Charter were amended. In accordance with our long — standing practice, we defer to the opinion of the County Attorney on matters of local law, such as the construction of a county charter.
2. If the Charter were amended to provide for a planning commission, that commission could exercise review and approval powers over development rights and responsibilities agreements, as contemplated in Article 66B, § 13.01.
3. The bill provides for review of a proposed agreement by the County's Planning Advisory Board. Under § 13.01, a proposed ordinance need not provide for review of an agreement by an entity named the "Planning Commission," so long as it provides for review by a similar entity familiar with the County land use plan.
4. It is unclear whether the proposed bill mandates that a developer submit a development rights and responsibilities agreement as part of a concept plan or simply sets a deadline for the submission of an agreement when a developer wishes to propose an agreement as part of a concept plan. However, if the bill were construed to mandate an agreement, it would be inconsistent with § 13.01, as the Legislature authorized local governments to create a voluntary process.
 I Background
A. Development Rights and Responsibilities Agreements
Development rights and responsibilities agreements are "agreements between a [local government] and a developer under which site specific conditions may be imposed but the right to develop in compliance therewith is `vested' at least for a certain period of time." Bollech v. Charles County, 166 F. Supp.2d 443,454 (D.Md. 2001) (quoting 2 Rathkopf, The Law of Zoning and Planning). They attempt to accommodate a developer's desire for certainty and stability in land use regulation relating to a project with the authority of a local government to revise its land use regulations in the public interest.
Under Maryland law, a landowner's ability to pursue development of a proposed use of the landowner's property is generally subject to future changes in local land use laws unless the landowner has commenced visible work on the land under a validly — issued building permit and intends to continue that construction to completion. See, e.g., Prince George's County v. Sunrise Development, 330 Md. 297, 307-8, 623 A.2d 1296 (1993); Pemberton v. Montgomery County, 275 Md. 363, 370, 340 A.2d 240 (1975). During the last decade, a concern arose in some quarters that this rule disadvantaged developers of long term projects. In particular, there was a concern that a local government could change its land use regulations in the midst of such a project to the detriment of the developer.
After a failed attempt in 1994 to pass legislation to respond to this concern in 1994, a legislative working group involving representatives of both developers and local governments was formed to fashion a bill authorizing binding commitments between local governments and developers concerning particular projects. The working group drafted a bill validating development rights and responsibilities agreements, which was passed by the Legislature with minor modifications at its next session. Chapter 562, Laws of Maryland 1995. That legislation authorizes local governing bodies to pass ordinances creating procedures for the adoption of development rights and responsibilities agreements. Annotated Code of Maryland, Article 66B, § 13.01.
The statute defines a "development rights and responsibilities agreement" as "an agreement made between a governmental body of a jurisdiction and a person having a legal or equitable interest in real property for the purpose of establishing conditions under which the development may proceed for a specified time." Article 66B, § 1.00(d).
The statute sets forth the basic aspects of such an agreement. An agreement is to be recorded in the land records and contain detailed information concerning the property, the regulations governing the property, and the persons with interests in the property. Article 66B, § 13.01(f)(1), (k). It can include provisions for dedication of a portion of the property for public use, preservation and restoration of historic structures, and other matters. Id. The agreement can also fix a time frame and conditions for the development of the property. Article 66B, § 13.01(f)(2). A key element of an agreement is that the laws and regulations concerning the use of the property, and the density and intensity of development in effect at the time of execution of the agreement ordinarily remain in force. § 13.01(j). That is, the property is not subject to subsequent changes in planning and zoning unless the local jurisdiction determines that compliance with later-enacted laws is "essential to ensure the health, safety, and welfare" of its residents. Id.
The statute authorizes a local governing body to designate a "public principal" to execute such agreements on behalf of the jurisdiction. § 13.01(b)(1)(ii). The State law also requires that the local ordinance contain certain basic procedures. For example, to commence the process for adoption of an agreement, a person with a legal or equitable interest in the property must file a petition with the public principal. § 13.01(c). A public hearing must be held. § 13.01(d). The public principal may not enter into an agreement "unless the planning commission of the local jurisdiction determines whether the proposed agreement is consistent with the plan of the local jurisdiction." § 13.01(e). Similarly, an agreement may only be amended upon a determination of the "planning commission" that the amendment is consistent with the local land use plan. § 13.01(h)(2).
Agreements last for five years, unless the parties specify otherwise. § 13.01(g). An agreement may be terminated earlier by mutual agreement. § 13.01(i)(1). In addition, the public principal or local governing body may suspend or terminate an agreement if, after a hearing, it determines that the public health, safety, or welfare requires suspension or termination. § 13.01(i)(2).
B. Bill 42-03
We understand that the Anne Arundel County Council is considering a proposed ordinance, Bill 42-03, that would implement the authority granted in Article 66B, § 13.01.[1]
Your questions are directed to two aspects of that bill.
First, while the State statute provides that development rights and responsibilities agreements are to be reviewed by the local "planning commission" for consistency with the local plan, there is no entity denominated as the "Planning Commission" in Anne Arundel County. Instead, Bill 42-03 would condition execution of a development rights and responsibilities agreement upon "a determination by the planning advisory board that the . . . agreement is consistent with the general development plan and growth management plan."
Second, the proposed ordinance would amend the County zoning law to state that a developer who files a concept plan for a development "shall include" a proposed development rights and responsibilities agreement as part of the concept plan. The State enabling legislation does not itself specify any circumstances in which such agreements are mandatory.
 II Analysis
A. Creation of Planning Commission by County Ordinance
You first ask whether a chartered county that derives its planning and zoning powers from the Express Powers Act may create a planning commission "with similar rights and responsibilities as one authorized by Article 66B."
Article 66B authorizes municipalities and certain counties to create a "planning commission" by ordinance.[2]
Article 66B, § 3.01 et seq. The primary function of a planning commission created under that provision is to make and approve a land use plan for recommendation to the local governing body. Id., §§ .05, 3.07. Such a planning commission also has approval authority over certain types of development within the jurisdiction, although the planning commission is subject to being overruled by the local governing body or other entity with jurisdiction over the particular project. Id., § 3.08. However, the authorization to create a planning commission under § 3.01 does not apply to charter counties such as Anne Arundel County.[3] See Article 66B, § 1.02 (Article 66B does not apply to charter counties except for specifically enumerated sections).
The County could create by ordinance a planning commission similar to that authorized by Article 66B only if authorized by the County Charter or by public general law. The Express Powers Act authorizes charter counties "to enact local laws . . . relating to zoning and planning . . . ." Annotated Code of Maryland, Article 25A, § 5(X)(1)(i). That authority could be the basis for creation of a Planning Commission by ordinance, if the ordinance were otherwise consistent with the County Charter. Thus, your question requires an interpretation of the County Charter. The County Attorney's Office has advised that the Charter could be amended to provide for a planning commission, but that creation of a commission by ordinance without an amendment would be at odds with the Charter. See Memorandum of Deputy County Attorney David A. Plymyer to Honorable Barbara D. Samorajczyk (August 25, 2003).
Under the longstanding policy of the Attorney General's Office, we refrain from rendering opinions on a question of local law, such as construction of a county charter. Accordingly, we defer to the opinion of the County Attorney's Office on whether an ordinance creating a planning commission in Anne Arundel County would be consistent with the County Charter. Of course, if the County were to amend its charter to allow creation of a planning commission, that commission could exercise the powers of a planning commission for purposes of § 13.01.
B. Review of Agreements by Planning Board instead of Planning Commission
You ask whether the failure of the proposed ordinance to provide for review of a proposed development rights and responsibilities agreement by a planning commission is inconsistent with State law. As indicated above, Bill 42-03 provides for the County's Planning Advisory Board to exercise the powers that are otherwise assigned to a "planning commission" under § 13.01.
The Planning Advisory Board is one of several entities and officials that have planning and zoning responsibilities under the County Charter. The County Charter provides for an Office of Planning and Zoning, which is charged with preparation and revision of the County's master plan subject to the approval of the County Council. Anne Arundel County Charter, § 531. The Planning Advisory Board[4] is to make recommendations to the Office of Planning and Zoning related to the master plan. Id., § 533. In addition, the Charter provides that the County Executive or the County Council may provide for reference to the Planning Advisory Board for review and recommendations "of any matter related to the board's functions and duties." Id., § 533(b).
You point out that the Planning Advisory Board can be distinguished from the "planning commissions" authorized in Article 66B, § 3.01. In particular, unlike a planning commission created under Article 66B, the Planning Advisory Board is not responsible for creating the County plan and largely acts in an advisory capacity. In addition, the appointment of the members of a planning commission created pursuant to Article 66B are subject to confirmation by the local legislative body. By contrast, the members of the Planning Advisory Board are appointed solely by the County Executive.
It is clear that the Legislature contemplated that charter counties would be able to avail themselves of the authority to enter into development rights and responsibilities agreements provided by § 13.01. See Article 66B, § 1.02(10) (making § 13.01 applicable to charter counties such as Anne Arundel County). On the other hand, as explained above, the provisions of Article 66B concerning creation of a planning commission do not apply to charter counties. Thus, the reference to "planning commission" in § 13.01 was evidently not intended to be limited to planning commissions created under Article 66B.
Nor do we believe that the Legislature was focused on the title "planning commission." Rather, given that the function of the planning commission mentioned in § 13.01 is to ensure the consistency of the agreement with the existing plan of the local jurisdiction, the Legislature presumably contemplated that this "planning commission," regardless of the title of the entity, would be an entity familiar with the local plan, and separate from the "public principal" who is a party to the proposed agreement.
The legislative history of § 13.01 confirms this interpretation. As originally enacted, § 13.01 defined "commission" as "a planning and zoning commission or similar body." See Article 66B, § 13.01(a)(3) (1998 Repl. Vol.) (emphasis added). Thus, it was clear that a planning commission created under § 3.01 of Article 66B was simply an example of the type of entity that could approve a development rights and responsibilities agreement under an ordinance enacted pursuant to § 13.01. During the 2000 session of the Legislature, that definition was eliminated as part of a revision of Article 66B to update and revise terminology. Chapter 426, Laws of Maryland 2000. No substantive change in the State planning and zoning law was intended. See Fiscal Note to House Bill 889 (2000). Nor is there any indication that the Legislature intended to limit the approval of development rights and responsibilities agreements to entities labeled "planning commission" or those created pursuant to § 3.01.
In Anne Arundel County, the County Council, the Office of Planning and Zoning and the Planning Advisory Board all have roles with respect to the County's master plan. Bill 42-03 designates the head of the Planning and Zoning as the "public principal" for purposes of § 13.01; it would be at odds with the design of the statute for the Office of Planning and Zoning to exercise the review and approval authority contemplated by § 13.01. Under the County Charter, it is evident that the Planning Advisory Board is to be familiar with the County's master plan; it is also an entity distinct from the "public principal" designated in the ordinance. In our view, it would be consistent with § 13.01 for the Planning Advisory Board to have review and approval authority over development rights and responsibilities agreements. Regardless of the method of appointment of its members, it is intended to have the same familiarity with the local land use plan as a planning commission created under Article 66B.
There may be a question whether the role contemplated in Bill 42-03 for the Planning Advisory Board is consistent with its advisory function under the County Charter. The County Attorney's Office has concluded that the functions assigned to the Planning Advisory Board are consistent with its functions under the County Charter. As indicated above, we express no opinion on this issue and defer to the County Attorney as to whether the ordinance may assign such duties to the Planning Advisory Board consistent with the County Charter.
C. Mandatory Proposal of Development Rights and Responsibilities Agreements
Bill 42-03 provides that a person may petition the County Planning and Zoning Officer to enter into a development rights and responsibilities agreement when the property for which a growth management area plan has been adopted by the County Council covering the person's property.[5] Under the bill, that officer may consolidate review and approval of a proposed agreement with the review and approval of a developer's "concept plan." Another portion of the County zoning law lists items to be included with a "concept plan." The bill adds to that list "a proposed development rights and responsibilities agreement" as part of the submission of a concept plan for development in a growth management area.
The first reference to concept plans suggests that a proposed development rights and responsibilities agreement is an optional item that could be considered together with the concept plan. However, the second reference could be read to mandate such a proposal as a necessary part of a concept plan. It is not entirely clear whether or not the bill is intended to require that developers always submit a proposed development rights and responsibilities agreement as part of a concept plan.
The question whether the bill would make development rights and responsibilities agreements mandatory has apparently not been presented to, or answered by, the County Attorney. We, of course, defer to the County Attorney on the appropriate construction of the proposed ordinance. However, we note that, if the bill is construed to make such agreements mandatory, it would be inconsistent with § 13.01. The State enabling legislation contemplates that the developer initiates the process leading to an agreement. § 13.01(c). It states that the public principal "may" execute an agreement. § 13.01(b). Nothing in the statute or its legislative history suggests that a local government could require an agreement. Indeed, § 13.01(m) provides that "[t]his section does not . . . authorize a governing body to require a party to enter into an agreement."[6]
To the extent that the proposed ordinance is intended to govern the timing of a developer's submission of a proposed agreement — i.e., if the developer intends to petition for an agreement, the petition must be submitted with the concept plan — it would not necessarily be inconsistent with the enabling statute. This would be within the County's authority to establish "procedures and requirements" for the consideration of agreements. Article 66B, § 13.01(b)(1)(i).
 III Conclusion
For the reasons stated above, our opinion is as follows:
1. In accordance with our usual practice, we defer to the opinion of the County Attorney on matters of local law, such as the construction of a county charter. In this instance the County Attorney has stated that legislation establishing a planning commission in connection with Bill 42-03 would be inconsistent with the Anne Arundel County Charter unless the Charter is amended.
2. If the County amended its charter and created a planning commission, that commission could exercise authority and review powers of the planning commission over development rights and responsibilities agreements as contemplated in Article 66B, § 13.01.
3. Bill 42-03 need not provide for review of a proposed development rights and responsibilities agreement by an entity denominated as the "Planning Commission," so long as it provides for review by an entity, such as the County's Planning Advisory Board, that is familiar with the County's land use plan.
4. A requirement that a developer's concept plan must include a proposed development rights and responsibilities agreement would not be consistent with the voluntary nature of authorization for such agreements.
J. Joseph Curran, Jr. Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] As a charter home rule county, Anne Arundel County largely derives its planning and zoning authority from the Express Powers Act, Annotated Code of Maryland, Article 25A, § 5(X), and the County Charter. However, the Legislature has specifically made § 13.01 applicable to charter home rule counties. See Article 66B, § 1.02(b)(10). In Montgomery and Prince George's counties, development rights and responsibilities agreements are governed by the Regional District Act rather than Article 66B of the Code. See Article 28, § 7-121 and 28, § 7-121.1.
[2] A planning commission created under § 3.01 et seq. is to consist of five or seven members appointed directly or indirectly by the local legislative body or, when there is a single local executive, by the executive with confirmation by the local legislative body.
[3] We thus agree with the conclusion of the County Attorney's Office on this issue. See Memorandum of Deputy County Attorney David A. Plymyer to Honorable Barbara D. Samorajczyk (July 16, 2003).
[4] The Planning Advisory Board consists of seven members appointed by the County Executive.
[5] The proposed ordinance would create a process for designating "growth management areas" — areas in which various facilities are in close proximity to each other and to which the County would attempt to direct development activity.
[6] The legislative history confirms the voluntary nature of an agreement. Testimony submitted by proponents of the bill who had helped draft it stressed that the bill did not mandate an agreement: "The agreements are voluntary. They can only exist when a local government and developer have come to terms." Position Paper submitted by Maryland Association of Counties on House Bill 700 (March 3, 1995). When the bill was before the Senate, a question arose as to whether a local governing body could make an agreement obligatory for a developer. This Office advised that the bill appeared to make such agreements "mutually voluntary," but suggested that the Legislature resolve any doubt on the question. Letter of Assistant Attorney General Sandra J. Cohen to Senator Michael J. Collins (April 6, 1995). The bill was subsequently amended in the Senate to add § 13.01(m). *Page 156