BOARD OF ZONING APPEALS OF HOWARD
COUNTY ET AL. *v.* MEYER ET UX.

[No. 140, October Term, 1954.]

*Decided June 13, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Joseph Sherbow* and *Edward F. Shea, Jr.*, with whom were *T. Hunt Mayfield* and *Sherbow & Sherbow* on the brief, for the appellants.

*Charles E. Hogg* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

William P. Federline, of Baltimore, owns a tract of land located along the Baltimore National Pike about one mile west of the Patapsco River, where he conducts the business of manufacturing and repair of motor truck bodies. He bought the tract, containing about an acre and a half, from William F. Thompson in December, 1946; began construction of a cinder-block building thereon in January, 1947; and started his business in February, 1947, before the building was completed.

The only residences in the vicinity at that time were two farm houses, one to the east owned by Thompson, the other to the west owned by Carl W. Meyer. Since that time Thompson has sold lots in a residential development known as Chestnut Hill, and Meyer has sold lots in a development known as The Oaks.

In May, 1948, the Legislature of Maryland enacted the Howard County Zoning Enabling Act, which took effect upon its approval by Governor Lane on June 1, 1948. Laws 1948, Extra Sess., ch. 19. That Act gave the County Commissioners of Howard County the power to designate Zoning Districts within the County, and to regulate the use, height, area and type of construction of buildings and the use of land. It also directed the County Commissioners to appoint a Zoning Commissioner and to confer upon him such duties, powers and authority as may be necessary and advisable for the proper administration and enforcement of the law.

The Zoning Enabling Act also expressly provided that any person, department, board or bureau of the County aggrieved by any decision of the Zoning Commissioner may appeal to the Circuit Court for Howard County, which shall hear all such appeals *de novo*. It further provided that an appeal may be taken from any decisions of the Circuit Court to the Court of Appeals of Maryland.

On July 27, 1948, the County Commissioners, under the authority of that Act, adopted Zoning Regulations for Howard County, which empowered the Zoning Commissioner to permit the extension of a non-conforming use "not exceeding a distance of 60 feet from the existing non-conforming use of land or building."

In 1950 the County Commissioners amended the Zoning Regulations by empowering the Zoning Commissioner to permit the extension of a non-conforming use "not exceeding a distance of 150 feet from the existing non-conforming use of land or building."

On April 18, 1953, Federline filed with the Zoning Commissioner an application for a permit to enlarge

his cinder-block building, which is 51 feet 4 inches wide, 16 feet 4 inches high, and 126 feet 6 inches long. His tract has a frontage of 122 feet on the south side of the Baltimore National Pike and a depth of about 615 feet. He asserted that the land on both sides of the road has been zoned in a Residential District, but he has a non-conforming building, and the Zoning Commissioner was empowered to permit an extension not exceeding a distance of 150 feet from the building. He asked for permission to extend his building back for a distance of 120 feet. On May 26, 1953, the Zoning Commissioner denied his application. On June 1, 1953, he filed an appeal to the Circuit Court for Howard County. On November 20, 1953, that Court affirmed the decision of the Zoning Commissioner. He thereupon entered an appeal to the Court of Appeals..

Prior to June 1, 1953, applications for permits were made to the Zoning Commissioner, and appeals from his decisions were heard by the Circuit Court *de novo*. Chapter 604 of the Laws of 1953, which amended the Howard County Zoning Enabling Act, was approved by Governor McKeldin on April 27, 1953, and took effect on June 1, 1953. That Act directed the County Commissioners of Howard County to appoint both a Zoning Commissioner and a Board of Zoning Appeals and to confer duties, powers and authority upon each. It repealed the right of appeal from the Zoning Commissioner and substituted a right of appeal from the Board of Zoning Appeals. It also revoked the provision that the Circuit Court shall hear such appeals *de novo*.

On January 12, 1954, the County Commissioners repealed the Zoning Regulations and adopted new Zoning Regulations, which are now in effect.

As the new Regulations were materially different from the old, Federline dismissed his appeal to the Court of Appeals, and on January 13, 1954, filed with the Board of Zoning Appeals a new application for a permit to build a 120-foot addition to his building and to continue the existing use of his property.

It appears that the Court below affirmed the decision of the Zoning Commissioner after the Act of the Legislature abolishing all appeals from the Zoning Commissioner, without a saving clause, had taken effect. In fact, the applicant did not file his appeal from the decision of the Zoning Commissioner until after the Act had taken effect abolishing such appeals. It is obvious that the Court's order of November 20, 1953, affirming the decision of the Zoning Commissioner was void, and consequently it was not *res judicata* of the decision of the Board of Zoning Appeals on the new application. *State v. Ambrose,* 191 Md. 353, 369, 62 A. 2d 359, 365; *Restatement, Judgments,* secs. 1c, 7.

The members of the Board inspected the applicant's property and the surrounding neighborhood, and held hearings on his application in February, 1954. The applicant informed the Board that he built a shack in 1947 for his welding machine and tools; and after his cinder-block building was completed he tore down the shack, but continued to use practically all of his land in his business. Back of his building there were piles of materials, which he usually covered with oil-skin paper to protect them from the elements. At different places on his tract he dismounted and assembled truck bodies, and he also welded and repaired outside the building.

It was thus conclusively established by the evidence that, before and at the time of the adoption of the original Zoning Regulations, the applicant was using substantially all of his tract of land in the operation of his business, and that he accordingly had a non-conforming use of substantially all of his property. The law is established that the zoning of an area as residential cannot apply to a previously established factory in that area, which is entitled under the circumstances to constitutional protection. *Amereihn v. Kotras,* 194 Md. 591, 601, 71 A. 2d 865; *Higgins v. City of Baltimore,* 206 Md. 89, 98, 110 A. 2d 503, 508.

The applicant gave the following description of the types of truck bodies he has been making: "I have some express-type bodies used for hauling freight. * * * We made the bodies that haul heated food from one hospital to another, and also, I believe, the House of Correction. * * * Insulated bodies, such as hauling meats. * * * Frozen food bodies. * * * Then we have stake bodies, cattle bodies."

In the instant case the applicant is not asking for permission to make any change in the use of his building or his land. He merely wants more floor space to enable him to work better on the same types of truck bodies as before and to have more protection for his materials. In explaining to the Board the reasons for his application, he said:

"One of the main ones is that I can't continue my operations confined in smaller floor space that I have lost by several restrictions that were passed by the Government and State regulations. * * * Well, when I originally went in the plant, I had it fully working area, and with the growth of the business, it was necessary that I put offices in, and stockrooms and bookkeeping offices, and in addition to that, I had to put in additional facilities for the increase in number of employees. * * * I had to take better than 200 square feet out of it just for sanitary facilities."

The applicant testified that he had not heard any complaints of noise from his plant. He explained that the reason why his work is unobjectionable is that he does not operate any large motors and does not do any riveting. He assured the Board that an increase in floor space will not produce any more noise than there has been in the past. He took occasion to say that several years ago his welding machines caused some interference with radio and television reception, but suppressors were put on them, and since that time he has not heard any complaint.

The Board also had the benefit of the testimony of two real estate brokers, John A. Magee and Elliott Chenoweth, who have had long experience in real estate appraisal. They expressed the opinion that the land immediately west of the applicant's plant is not suitable for residential development, especially since it is traversed by a stream. They also testified that the plant had not been a detriment to any residential properties.

Mr. Magee, who has been a real estate broker for more than 35 years, and has been an instructor in real estate and appraisal at the Johns Hopkins University, expressed the opinion that if the building is extended, the owners of nearby properties will not suffer one dollar of depreciation in their values. Asked whether he thought the enlargement of the building would have a deterrent effect upon prospective lot buyers in Chestnut Hill and The Oaks, Mr. Magee replied: "I don't believe that a prospective customer * * * would pay a penny less, with a roof that was twice the size that it is now."

Mr. Chenoweth likewise testified that the enlargement of the building would not, in his opinion, have any detrimental effect upon any residential property in the neighborhood. He elaborated as follows: "So far as planning goes, he has 64,000 square feet of land there, and the present building is 6,300 square feet; and if he puts an addition, 6,000 square feet on, he'll have a total of 12,300 square feet, practically speaking. Well, that's a very small amount of 64,000 square feet when it comes to commercial property, or protecting a residential property * * *."

The members of the Board gave careful consideration to the testimony of the protestants, but on April 5, 1954, they unanimously decided to grant the permit for the extension of the building. They were impressed by the fact that every one of the protestants had purchased his land and built his house after the applicant had started in business, and by the further fact that none of the protestants had been disturbed by any noise or

odor from the applicant's plant. The Board stated in its opinion that the property owners feared that the enlargement of the building would lower the value of their properties, but, on the contrary, the professional real estate dealers testified that the enlargement would not depreciate the values of the neighboring properties. "Our concern," the Board said, "is to what extent the enlargement would further depreciate property values, and evidence has not been produced to show that any appreciable depreciation would take place. In fact, professional opinion at the hearing has shown otherwise."

Meyer and his wife appealed from the decision of the Board to the Circuit Court for Howard County. On October 20, 1954, the Court passed an order reversing the Board's decision. From that order the applicant appealed to the Court of Appeals.

This appeal requires us to consider the Zoning Regulations which were adopted by the County Commissioners on January 12, 1954.

Section 13 of these Regulations, entitled "Non-Conforming Uses," provides as follows: "A non-conforming use may not be extended, increased in size or changed in design and buildings may not be erected or extended on land used as a non-conforming use unless approved by the Board of Zoning Appeals, as provided in Section 23 and subject to the limitations, guides and standards provided in Section 24."

The Regulations do not empower the Board of Zoning Appeals to permit the extension of a non-conforming use "not exceeding a distance of 150 feet," such as the old Regulations empowered the Zoning Commissioner.

Section 23, entitled "Powers of the Board of Appeals," delegates to the Board the power to authorize the extension or enlargement of a building having a non-conforming use, provided:

"1. That the extension involves the same use as existing at the time of the adoption of these regulations.

"2. That the extension shall not exceed 100% of the gross floor area of the non-conforming use as it existed at the time of the adoption of these regulations.

"3. That when a 100% increase in the gross floor area of the non-conforming use as it existed at the time of the adoption of these regulations has been granted, no further extension shall be permitted and the Board of Zoning Appeals shall have no power to grant such further extension.

"4. That no extension to a non-conforming use shall be granted where the proposed extension would result in a violation of the area or height requirements of these regulations."

Section 24, entitled "Limitations, Guides and Standards," directs that the Board shall not approve an application for a permit where it finds that the "proposed building, addition, extension of building or use, sign, use or change of use would menace the public health, safety, security, morals or general welfare, or would result in dangerous traffic conditions, or would jeopardize the lives or property of people living in the neighborhood." This section then specifically provides that in deciding such matters the Board shall give consideration, among other things, to the following:

"1. The number of people residing, working or studying in the immediate areas.

"2. Traffic conditions including facilities for pedestrians, such as sidewalks and safety zones and parking facilities available and the access of cars to highways.

"3. The orderly growth of the community.

"4. The reasonable needs of the entire community and particular neighborhoods.

"5. The purpose of these regulations as provided in Sections 1 and 2.

"6. The effect of odors, dust, gas, smoke, fumes, vibration, glare and noise upon the use of surrounding properties.

"7. Facilities for sewers, water, trash and garbage collection and disposal and the ability of the County to supply such services.

"8. Availability of fire-fighting equipment.

"9. Decisions of the Circuit Court for Howard County and the Court of Appeals of Maryland.

"10. The effect of such use upon the peaceful enjoyment of people in their homes.

"11. The most appropriate use of land and structure.

"12. The type and kind of structure in the vicinity where people are apt to gather in large numbers such as schools, churches, theatres, hospitals and the like.

"13. As developed, the master plans for highways, parks, schools, sewers, water, population, recreation and the like."

In this case there is no dispute over most of the limitations, guides and standards specified by the County Commissioners. There is no problem as to masses of people residing, working or studying in the neighborhood. No difficulties are expected from traffic conditions, such as facilities for pedestrians, parking facilities, and access of motor vehicles to the highway. There has been no complaint about odors, dust, gas, smoke, fumes, vibration, glare or noise. There is no problem concerning facilities for sewers, water, and garbage disposal. No question has been raised as to the availability of fire-fighting apparatus. There are no structures in the vicinity where people are apt to gather in large numbers, such as schools, churches, theatres, and hospitals. And finally there was no controversy over any master plan for highways, parks, or schools or other facilities.

This case is one in which the protestants have not been disturbed in the past but they fear that they might be

disturbed in the future if the applicant's building is enlarged. The protestants urged that the increase of the applicant's floor area might depreciate the value of their properties. Their objections were largely suppositional. It is true that there was a difference of opinion on what effect there would be upon "the peaceful enjoyment of people in their homes." But all of the protestants had bought their lots and built their homes after the applicant had erected his building, and they admitted that they had not found his business objectionable.

Roy Wood, who resides in the Chestnut Hill development about 800 feet from the applicant's building, stated emphatically that he did not have "the slightest objection to Mr. Federline having his place there." His only protest was against "driving a wedge in this zoning business." William Wurzberger, who also resides in that development, admitted that in the summertime he could not even see the applicant's building from his home on account of the trees. His only fear was that Federline might put in "lunch whistles, starting and stopping whistles." Joseph Damico, of Catonsville, who owns a lot in The Oaks, said that he would not build on his lot if the applicant's building is extended; yet he admitted that the building is only partially visible from his lot, and then only when the trees are bare.

However sincere the protestants may have been in their belief, the Board was entitled to rely upon the expert opinions of the real estate appraisers. The function of a zoning board is to exercise the discretion of experts, and on an appeal from a decision of the board the Court, although it may not arrive at the same conclusion, may not disturb the decision if the board complied with all of the legal requirements of notice and hearing, and the record shows substantial evidence to sustain the finding.

It is true that the Legislature is without authority to divest the courts of their inherent power to review the actions of administrative boards in order to determine

whether they impair personal or property rights by reason of an unlawful or arbitrary exercise of discretion. However, it is only where the record is devoid of substantial evidence to sustain the finding that the Court is justified in declaring the action of the board arbitrary or discriminatory. *Heath v. Mayor and City Council of Baltimore*, 187 Md. 296, 304, 49 A. 2d 799; *Oursler v. Board of Zoning Appeals of Baltimore County*, 204 Md. 397, 405, 104 A. 2d. 568; *Offutt v. Board of Zoning Appeals of Baltimore County*, 204 Md. 551, 562, 105 A. 2d 219.

Our conclusion is that there was substantial evidence before the Board to warrant it in granting the permit. As the Court below had no right to substitute its judgment for the judgment of the Board, we must reverse the order reversing the decision of the Board and remand the case for the passage of an order affirming the decision.

*Order reversed and case remanded, with costs.*