795 A.2d 96

Larry POWELL et al.

v.

CALVERT COUNTY, Maryland et al.

No. 45 Sept. Term, 2001.

Court of Appeals of Maryland.

Jan. 10, 2002.

Reconsideration Denied March 6, 2002.

Douglas C. Meister (Robert H. Rosenbaum of Meyers, Rodbell & Rosenbaum, P.A., on brief), Riverdale, for petitioners.

John C. Richowsky, Friendship, for respondents.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL,* and BATTAGLIA, JJ.

---

* Judge Harrell participated in the oral argument, but did not participate in the decision and the adoption of the opinion.

CATHELL, Judge.

James W. Graner, respondent,[1] filed an application for a special exception with the Calvert County Board of Appeals (hereinafter Board). In February of 1997 the Board granted the special exception over the protests of various neighbors, including Larry Powell and Susan Mulvaney, petitioners. Petitioners filed a petition for judicial review in the Circuit Court for Calvert County, which affirmed the decision of the Board. Petitioners then filed an appeal with the Court of Special Appeals, which reversed the decision of the Circuit Court, vacated the decision of the Board, and remanded the case to the Board for further proceedings.

On September 12, 1999, the Board, after making a statement on the record, once again granted the special exception applied for by respondent. Petitioners filed a petition for judicial review in the Circuit Court. After a hearing was held, the Circuit Court affirmed the Board in part and remanded part of the case to the Board for further proceedings.

Petitioners filed an appeal with the Court of Special Appeals. The Court of Special Appeals affirmed all of the decisions of the Board, thereby, affirming in part and reversing in part the decision of the Circuit Court. Petitioners filed a Petition for Writ of Certiorari to this Court, which we granted. Petitioners present two questions for our review:

"I. Did the lower court err by holding that when an administrative agency decision granting a special exception is vacated, the use of the property pursuant to the ultimately vacated special exception served to vest the rights to that use under the doctrine of vested rights?

II. Did the lower court err by affirming the administrative agency grant of a special exception based on the lower

---

1. As stated in respondent's brief, although the case caption states that the respondents are Calvert County and the Calvert County Board of Appeals, neither has participated in the judicial review process of the Board of Appeals. Respondent has been part of the proceedings in the Circuit Court for Calvert County and the resulting appeal in the Court of Special Appeals.

court's finding that prescribing a condition to the grant of the special exception was a substitute for substantial evidence of a required finding, when there was no evidence in the record to support the finding?"

We answer yes to question I and reverse the decision of the Court of Special Appeals. We hold that respondent had not obtained a vested right to use his property for the storage of materials.

## Facts

Respondent owns a fourteen-acre parcel of land in Calvert County that is zoned RUR—Rural District.[2] An excavating business has been conducted on a portion of the property for more than twenty years and respondent has been running the business since 1981.

In 1984, respondent received a home occupation permit under the Calvert County Zoning Ordinance (hereinafter Zoning Ordinance) that permitted respondent to locate the office for his business on the property. In 1986, respondent was granted a special exception by the Board that permitted him to park excavation equipment on the premises. Subsequently,

2. The "Purpose and Intent of Districts" section of the Calvert County Zoning Ordinance, which was adopted on May 8, 1984 and last revised on May 11, 2001, states:

"3-1.01   *RUR—Rural District*

This primary district is intended to protect and preserve areas of the County which are presently rural or agricultural in character and use. The purpose of this district is to provide for a full range of agricultural activities, and to allow low density residential development for those who are willing to live in more remote locations and to assume the costs of providing many of their own services and amenities. This district is also intended for the purposes of managing watersheds and water supplies; to provide for spacious development; to protect forest, wetland, and scenic areas; to protect fish and wildlife; to promote forestry, the growing of crops and grazing. Furthermore, it is intended that in this district there shall be no basis, under this Ordinance, for recourse against the effects of any reasonable farming or forestry operation, as permitted in this district, and conducted in a reasonable manner in accordance with good husbandry or forestry practices, including but not limited to noise, odor, vibration, fumes, dust or glare."

respondent began to store construction equipment and materials such as top soil and gravel.

After complaints from respondent's neighbors, Calvert County issued several citations to respondent claiming violation of the Zoning Ordinance. In 1994, the Board of County Commissioners for Calvert County brought an action seeking injunctive relief in the District Court of Maryland sitting in Calvert County. The District Court found that the land use associated with the excavating business was a valid nonconforming use; therefore, the injunctive relief requested was denied. The County appealed to the Circuit Court for Calvert County. The Circuit Court reversed the decision of the District Court, finding that the screening of topsoil and the storage of materials were not valid nonconforming uses.[3] The Circuit Court found the storage of materials to be a use allowed only by way of a special exception in a RUR zone, and granted respondent thirty days to file for the special exception.

Respondent filed an application for a special exception with the Board. In February of 1997 a hearing was held before the Board.[4] At the end of the hearing, the Board granted the special exception. A petition for judicial review was filed by petitioners in the Circuit Court for Calvert County. The Circuit Court affirmed the decision of the Board and petitioners filed an appeal with the Court of Special Appeals.

---

3. Insofar as we are aware, the issues of the "intensification" or "extension" of the non-conforming uses were not presented. They are not presented in the instant appeal. The doctrines "intensification" of nonconforming uses and "extension" of non-conforming uses are explained in *County Commissioners of Carroll County v. Zent,* 86 Md.App. 745, 753–58, 587 A.2d 1205, 1209–11 (1991).

4. At the time of the hearing, Zoning Ordinance 3–3.10.J provided for a special exception for storage of material and/or equipment for a commercial use in a RUR zone, it states:

"J. *Outdoor Storage in Connection with Commercial and Industrial Uses,* (special exception in the RUR District, conditional in the ECTC District), provided that the material and/or equipment stored is not visible from adjoining properties or the road."

On December 5, 1998, while the appeal was pending with the Court of Special Appeals, the Board of County Commissioners of Calvert County amended the Zoning Ordinance. Resolution Number 47–98 [5] amended the Zoning Ordinance so that a special exception was not allowed for "outdoor storage in connection with commercial and/or industrial uses" and "machinery and equipment in connection with excavating and/or contracting businesses" in a RUR district. This amendment repealed the section under which respondent had obtained initial approval from the Board of Appeals and the Circuit Court for his special exception.

On April 23, 1999, after the County had amended the ordinance deleting the special exception provision at issue, the Court of Special Appeals, in an unreported opinion (*Powell I*), held that "[b]ecause the state of the record prevents us from concluding whether there was substantial evidence supporting the Board's decision, we shall reverse the circuit court's judgment and instruct the court to vacate the Board's decision and remand the case to the Board for further proceedings." Specifically, the Court of Special Appeals held that there was insufficient evidence in the record about a site visit to respondent's property prior to the hearing before the Board. There was not any evidence in the record about "when the inspection occurred, who attended, what was said or observed, and whether the parties were advised of the visit." The Court of Special Appeals held that this lack of evidence resulted in a deficient record from which the court was unable to determine if the Board's decision was based on substantial evidence. The court reversed the judgment of the Circuit Court for Calvert County with instructions to vacate the decision of the Board. Apparently, the Circuit Court then vacated the Board's decision.

On September 2, 1999, the Board, at its regular public meeting, addressed respondent's request for a special excep-

---

**5.** We presume that the zoning ordinance of Calvert County may be amended by resolution. The parties do not contend to the contrary. Normally, zoning ordinances are amended by ordinances.

tion. The Board, stating that it was strictly following the Court of Special Appeals's opinion, did not reopen the record for new evidence or allow any party to comment on the proceedings. Instead, the Board made some statements about the circumstances surrounding its site visit to respondent's property and then proposed to adopt its previous findings of fact with amendments. The findings of fact were adopted and the special exception was then approved by the Board pursuant to the law as it existed at the time of the original hearing. The Board did not consider the ordinance as it existed at the time of its final decision, which was that the special exception granted was no longer available. On October 18, 1999, the Board filed revised findings of fact and conclusions, which included the clarifications that the Board felt were required by the opinion of the Court of Special Appeals.

On November 16, 1999, petitioners filed, in the Circuit Court for Calvert County, a Petition Requesting Judicial Review of the September 2, 1999 decision of the Board to grant the special exception. The Circuit Court filed an Opinion and Order on June 2, 2000. In its opinion, the Circuit Court found that although there was a change to the Zoning Ordinance so that a special exception could not have been granted, respondent had obtained a vested right which protected him from the intervening change in the Zoning Ordinance. The Circuit Court also found that respondent had provided ample evidence so that there was substantial evidence in the record to support the Board's granting of the special exception under the prior law. The last issue presented to the Circuit Court by petitioners was whether the Board had properly considered whether respondent resided on the premises, which was a condition for the previous granting of the home occupation permit and the special exception. The Circuit Court found that the Board failed to properly consider this issue. Therefore, the Circuit Court affirmed the Board on the first two issues and remanded the case to the Board for the purpose of addressing the home occupation permit.

Petitioners appealed the decision of the Circuit Court to the Court of Special Appeals. On March 9, 2001, the Court of

Special Appeals filed an opinion (*Powell v. Calvert County*, 137 Md.App. 425, 768 A.2d 750 (2001) (*Powell II*)) [6] which affirmed all of the decisions of the Board, thereby affirming in part and reversing in part the Circuit Court. Petitioners filed a Petition for Writ of Certiorari to this Court, which we granted. *Powell v. Calvert County*, 364 Md. 534, 774 A.2d 408 (2001).

## Discussion

Petitioners contend that the 1998 amendment to the Zoning Ordinance should have been applied to respondent's application for a special exception after the Court of Special Appeals (*Powell I*) reversed the decision of the Circuit Court with instructions for that court to vacate the decision of the Board and remand the case to the Board for further proceedings. On remand, the Board, even though the 1998 amendment was in effect, still granted the special exception based on the Zoning Ordinance prior to the 1998 amendment.

The Court of Special Appeals, in examining the prospective versus the retroactive application of the 1998 amendment determined that the 1998 amendment had a retroactive application, making it effective against pending cases from the date of its inception. The Court of Special Appeals stated:

"In the case before us, the amendment provided that it was effective as of December 8, 1998. As was true in *Holland*,[7] it contained no other provision with respect to prospective or retroactive application. Unlike the amendment in *Holland*, however, the amendment before us does

---

6. *Powell I* and *Powell II* were heard by two completely different panels of judges.

7. *Holland v. Woodhaven Building & Development, Inc.*, 113 Md.App. 274, 687 A.2d 699 (1996), involved a change in the ordinance during an applicant's subdivision approval process. *Washington Suburban Sanitary Commission v. Riverdale*, 308 Md. 556, 520 A.2d 1319 (1987), was not a zoning or property case, it involved changes in provisions relating to immunity from tort liability. Neither involved special exceptions, variances or the like. *See Luxmanor Citizens Association v. Burkart*, 266 Md. 631, 296 A.2d 403 (1972), which we discuss *infra*.

by its terms operate retroactively. We cautioned in *Holland* that

> while zoning cases are not exempt from the principles of construction set forth in *Riverdale Fire Company*, changes in zoning laws, such as zoning reclassifications, ordinarily will apply retrospectively *by their very terms.* Such *in rem* changes to the status of property necessarily will raise the question of whether the changes interfere with the property owner's vested rights.

*Holland,* 113 Md.App. at 286–87, 687 A.2d 699 (emphasis in original) (citations omitted). The amendment in this case was tantamount to a change in zoning classification. As of its effective date, the outside storage of construction materials was not a use permitted by special exception, absent vested rights."

*Powell v. Calvert County,* 137 Md.App. 425, 435–36, 768 A.2d 750, 756 (2001).

The Court of Special Appeals then examined whether respondent had obtained a vested right to use his property for outdoor storage. The Court of Special Appeals stated:

> "In the case before us, the Board's decision issuing the special exception was vacated. Thus, even though the result in [*Town of Sykesville v.*] *West Shore [Communications, Inc.]* was the same as the result we reach in this case, its holding is not on point.
>
> The use, originally unlawful, became lawful when the Board approved the special exception. It did not thereafter become 'unlawful' because the Board acted within its powers and there was no violation of the zoning ordinance. We see no difference, for purposes of the issue before us, between a use that only comes into existence pursuant to and after issuance of a special exception, on the one hand, and an existing illegal use that becomes legal when a special exception is issued and the use continues in existence. In each case, there was a lawful use in existence prior to the amendment of the zoning ordinance. When the case was before us on the prior occasion, we did not rule on the

sufficiency of the evidence. As we shall explain below, the evidence was legally sufficient to support the Board's decision and its amended opinion that is now before us complies with the standard for appellate review. The special exception was never declared invalid.

. . .

In the case before us, on the first appeal, we held that the record was insufficient for meaningful appellate review. On remand to the circuit court, we could have, and perhaps should have, directed the court to remand the case to the Board without vacating its existing decision.

In any event, we hold that the special exception was never declared unlawful or invalid within the meaning of the rule of vested rights. The applicant did proceed at his own risk, however, in that had we reversed the Board's action on this appeal based on an error of law, his rights would not have vested."

*Powell,* 137 Md.App. at 440–42, 768 A.2d at 758–59 (citations omitted).

 In instances where there is ongoing litigation, there is no different "rule of vested rights" for special exceptions and the like. Until all necessary approvals, including all final court approvals, are obtained, nothing can vest or even begin to vest. Additionally, even after final court approval is reached, additional actions must sometimes be taken in order for rights to vest. In *Sykesville v. West Shore Communications, Inc.,* 110 Md.App. 300, 305, 677 A.2d 102, 104 (1996), a case in which rights were found to have vested, the Court of Special Appeals noted the standard for "vesting" in the zoning context:

"1) there must be the actual physical commencement of some significant and visible construction; 2) the commencement must be undertaken in good faith, to wit, with the intention to continue with the construction and to carry it through to completion; and 3) the commencement of construction must be pursuant to a validly issued building permit."

In the case *sub judice,* a special exception approval, whose validity is being litigated, is not finally valid until all litigation concerning the special exception is final. Persons proceeding under it prior to finality are not "vesting" rights; they are commencing at "their own risk" so that they will be required to undo what they have done if they ultimately fail in the litigation process. We hold that respondent never obtained a final valid exception prior to the change in the law and, therefore, never obtained a vested right. In our recent case of *Marzullo v. Kahl,* 366 Md. 158, 783 A.2d 169 (2001), we further examined the doctrine of vested rights when we quoted *Prince George's County v. Sunrise Development Limited Partnership,* 330 Md. 297, 312–13, 623 A.2d 1296, 1303–04 (1993):

"The third stream of cases involves the issue of vested rights, per se. By a per se vested rights case we mean one invoking '[t]hat doctrine, which has a constitutional foundation [and which] rests upon the legal theory that when a property owner obtains a lawful building permit, commences to build in good faith, and completes substantial construction on the property, his right to complete and use that structure cannot be affected by any subsequent change of the applicable building or zoning regulations.' *Prince George's County v. Equitable Trust Co.,* 44 Md.App. 272, 278, 408 A.2d 737, 741 (1979).

The first case in this Court squarely raising that doctrine is *Richmond Corp. v. Board of County Comm'rs for Prince George's County,* 254 Md. 244, 255 A.2d 398 (1969). There the developer owned commercially zoned land abutting residentially zoned land. The developer had expended large sums of money in acquisition of the property and in preparing plans, leases and specifications for a shopping center on the commercially zoned tract that would utilize the residentially zoned tract for parking. Before there was any construction on the ground, the zoning ordinance was amended to require a special exception for parking on residentially zoned property as auxiliary to a commercial use. In rejecting a contention that the developer had vested rights under

the earlier zoning, we borrowed from the law of noncon-forming uses the concept of public knowledge in the neigh-borhood of the use, saying:

'In Maryland it is established that in order to obtain a "vested right" in the existing zoning use which will be constitutionally protected against a subsequent change in the zoning ordinance prohibiting or limiting that use, the owner must (1) obtain a permit or occupancy certificate where required by the applicable ordinance and (2) must proceed under that permit or certificate to exercise it on the land involved so that the neighborhood may be ad-vised that the land is being devoted to that use. *See Feldstein v. LaVale Zoning Board,* 246 Md. 204, 210, 227 A.2d 731, 734 (1967), indicating that [*Mayor & City Council v.*] *Shapiro* [, 187 Md. 623, 51 A.2d 273 (1947)] as well as *Chayt v. Board of Zoning Appeals,* 177 Md. 426, 9 A.2d 747 (1939), established as one of the tests for deter-mining the existence of a nonconforming use "is whether such use was known in the neighborhood.' "

254 Md. at 255–56, 255 A.2d at 404.

In *Rockville Fuel & Feed Co. v. Gaithersburg,* 266 Md. 117, 291 A.2d 672 (1972), we said that 'such a "vested right" could only result when a lawful permit was obtained and the owner, in good faith, has proceeded with such construction under it as will advise the public that the owner has made a substantial beginning to construct the building and commit the use of the land to the permission granted.' *Id.* at 127, 291 A.2d at 677; *see also County Council for Montgomery County v. District Land Corp.,* 274 Md. 691, 337 A.2d 712 (1975)."

*Marzullo* at 192–93, 783 A.2d at 188–89 (alterations in origi-nal). Furthermore, in *O'Donnell v. Bassler,* 289 Md. 501, 508, 425 A.2d 1003, 1007 (1981), we stated:

"Generally, in order to obtain a vested right in an existing zoning use that will be protected against a subsequent change in a zoning ordinance prohibiting that use, the owner must initially obtain a valid permit. Additionally, in reliance

upon the valid permit, the owner must make a substantial beginning in construction and in committing the land to the permitted use before the change in the zoning ordinance has occurred."

Respondent did not obtain a vested right because he never used his property for the storage of materials under a valid special exception. We have held that a vested right does not come into being until the completion of any litigation involving the zoning ordinance from which the vested right is claimed to have originated. In *Ross v. Montgomery County*, 252 Md. 497, 250 A.2d 635 (1969), we stated that:

"The appellants have also interposed, as working in their favor, the theory of vested rights. Their contention being that, because of the high price they paid for the land based on its then authorized use for an apartment hotel, their expenditure for architect's fees and the cost incurred in site preparation, the zoning regulations which the County seeks to impose have been rendered inoperative.

In *Mandel v. Bd. of County Comm'rs of Howard County*, 238 Md. 208, 208 A.2d 710 (1965), a change in zoning regulations was enacted while litigation was pending in respect to the use of the appellants' property under the former zoning regulations. The appellants contended that this violated their constitutional rights. Judge Oppenheimer, writing the opinion for this Court stated:

' * * * this case is to be determined under the law as it now exists, that the appellants had not secured a final decree establishing their rights to use their properties for the use permitted under the former classification, that they had no vested rights, and that the change in the regulations is not invalid because it eliminates the proposed use.' *Id.* at 215, 208 A.2d 710.

The Court in *Mandel*, aptly termed the right acquired under the permit as 'inchoate' and followed the rationale of this Court in *Yorkdale v. Powell*, 237 Md. 121, 205 A.2d 269 (1964), wherein Judge Hammond (now Chief Judge), speaking for the Court said:

'It would seem to follow from the decisions in *Banner [v. Home Sales Co. D.,* 201 Md. 425, 94 A.2d 264], *Lake Falls [Ass'n v. Board of Zoning Appeals of Baltimore County,* 209 Md. 561, 121 A.2d 809] and *Grau [v. Board of Zoning Appeals of Baltimore County,* 210 Md. 19, 122 A.2d 824]* that an applicant for rezoning to a more intense use of his property, who has been successful before the zoning authorities and the circuit court does not acquire a vested or substantive right which may not be wiped out by legislation which takes effect during the pendency in this Court of the appeal from the sections below.' *Id.* at 126, 205 A.2d 269."

*Id.* at 503, 250 A.2d at 638–39.

In *Luxmanor Citizens Association v. Burkart,* 266 Md. 631, 296 A.2d 403 (1972), we examined an amendment in a zoning ordinance that required four votes for the granting of a special exception instead of a three-vote majority of the five-member zoning board. The amendment was "effective immediately" and was adopted while the granting of the special exception was being appealed. In explaining when an amendment to a zoning ordinance applies only prospectively (contrary to the situation in the case at bar), we note in holding that the amendment in *Luxmanor* did not void the granting of the special exception, that:

"The appellants, however, vigorously contend that under the prior decisions of this Court in *Janda v. General Motors Corporation,* 237 Md. 161, 205 A.2d 228 (1964); *Yorkdale Corporation v. Powell,* 237 Md. 121, 205 A.2d 269 (1964); *Springloch Area Citizens Group v. Montgomery County Board of Appeals,* 252 Md. 717, 251 A.2d 357 (1969); and *Dal Maso v. Board of County Commissioners for Prince George's County,* 264 Md. 691, 288 A.2d 119 (1972), the decision of the Board should be held by us to be void because of the provisions of the amendatory legislation. In our opinion, this contention is unsound and the reliance of the appellants upon the cases mentioned is misplaced.

This Court has decided that a legislative change in the law in regard to procedure, rather than in regard to sub-

stance, will be applied to matters and proceedings taking place after the effective date of the change in the law. Chief Judge Brune, for the Court, aptly stated the rule in *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 254, 137 A.2d 680, 683 (1958), as follows:

'... [W]here the effect of the new statute is not to impair existing substantive rights but only to alter the procedural machinery involved in the enforcement of those rights, *such legislation is usually construed as operating on all proceedings instituted after its passage,* whether the right accrued before or after that date.' (Emphasis supplied.)

To the same effect, *see Richardson v. Richardson,* 217 Md. 316, 142 A.2d 550 (1958) and *Janda, supra.* The appellants do not contend that the amendment requiring four affirmative votes for granting a special exception must be applied to a decision made after its enactment, but rather that the ordinance must be applied to invalidate a decision of the Board made some six and one-half months *prior* to its enactment.

The appellants are correct in pointing out that the petitioners had acquired no vested right to use the subject property for a medical clinic prior to the effective date of the amendatory legislation. They argue that the application of the general rule, *i.e.,* that we apply the zoning law existing at the time of the appeal rather than when the case was decided below, should result in the nullity of the Board's decision. This is correct when there is no vested right involved if the change in the law subsequent to the decision in the lower court makes the case moot because the prior statutory basis for the action below has been removed by statute."

*Id.* at 644, 296 A.2d at 410. The change in the law in the instant case was substantive, not procedural.

Under the facts of the case at bar, respondent had not obtained a "valid permit" or in this case, a valid special exception. After respondent was granted the special excep-

tion by the administrative entity, petitioners sought judicial review in the Circuit Court and then appealed to the Court of Special Appeals. The Court of Special Appeals (*Powell I*) held that the state of the record prevented the court from concluding whether there was substantial evidence. The mandate stated: "Judgment of the Circuit Court for Calvert County reversed; case remanded with instructions to vacate the decision of the Calvert County Board of Appeals and to remand to the Board for further proceedings consistent with this opinion." Upon remand to the Board, the prior decision of the Board to grant the special exception had been vacated.[8] At the time of the new proceeding, the 1998 amendment was in effect and should have been applied by the Board. Respondent could not have then obtained a valid special exception. At no time was respondent proceeding under a "valid permit." His right to the special exception was, at all times, in litigation.

The Court of Special Appeals opines that the special exception granted to petitioner by the Board was never declared "unlawful or invalid." It makes no difference. It was still in litigation. Even if the special exception was never "declared" invalid, it was never a final valid special exception, which would qualify respondent to begin to vest rights in a zoning approval. As stated, *supra*, upon the Board's original granting of the special exception to respondent, petitioners sought judicial review. Therefore, the "valid permit" never took final effect because the litigation dealing with the special exception had not reached its final conclusion. At the Court of Special Appeals (*Powell I*), the decision of the court was to vacate the decision of the Board. This effectively nullified the decision of the Board to grant the special exception and respondent did not have any form of a final special exception at this point. In *Powell II*, the Court of Special Appeals contends that the court in *Powell I* should have remanded the case to the Board

---

8. Vacate is defined as "[t]o nullify or cancel; make void; invalidate <the court vacated the judgment>. Cf. OVERRULE" *Black's Law Dictionary* 1546 (Bryan A. Garner ed., 7th ed., West 1999).

without vacating its existing decision,[9] but what the new panel of that court claims the prior panel of that court should have done and what the prior panel actually did are two different things.[10] The prior panel of that court directed the Circuit Court to vacate the decision of the Board and to remand the case to the Board for further proceedings. Upon the case being remanded, the 1998 amendment to the law was in effect and should have been applied by the Board. Respondent was never storing his materials under a final, valid special exception. He started out storing his materials unlawfully and he never obtained a special exception clear of litigation that would have allowed him to store his materials under a valid special exception. Therefore, he never satisfied the criteria for a vested right.

### Conclusion

We hold that respondent did not obtain a vested right to store his materials on his property because he never obtained a final, valid special exception, as he did not obtain a special exception that was free of all pending litigation.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY AND REMAND THE CASE TO THAT COURT WITH DIRECTIONS TO VACATE THE DECISION OF THE CALVERT COUNTY BOARD OF APPEALS AND REMÁND THE CASE TO THE BOARD FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT GRANER.**

---

9. We note that even if the Court of Special Appeals had not vacated the decision of the Board but had only remanded the case, our holding would be the same. As the Court of Special Appeals held in *Powell II*, *supra*, the Board on remand should have applied the 1998 amendment.

10. As stated, *see* footnote 5, *Powell I* and *Powell II* were heard by two completely different panels of judges.