877 A.2d 1166

Jack ANTWERPEN, et al.

v.

BALTIMORE COUNTY, Maryland.

No. 696, Sept. Term, 2004.

Court of Special Appeals of Maryland.

July 7, 2005.

Nathan D. Alder (Neuberger, Quinn, Gielen, Rubin & Gibber, PA on the brief), Baltimore, for Appellant.

Carole S. Demilio (Peter Max Zimmerman, People's Counsel on the brief), Towson, for Appellee.

Panel: SALMON, DEBORAH S. EYLER, KRAUSER, JJ.

SALMON, Judge.

This is a zoning case. The property affected by the zoning consists of approximately 2.5 acres zoned B.M. (Business Major) and is located on the northwest corner of the intersection of Brenbrook Drive and Church Lane in the Randallstown area of Baltimore County. It is improved with a large automobile dealership building. Adjoining the building is an outdoor sales area. The property is owned by Jack Antwerpen and Antbren, LLC (hereafter "Antwerpen").

The selling of used automobiles is the business of 3636 LLC, D/B/A Prestige Imports ("Prestige"). Antwerpen's goal is to move Prestige's used-car operation lawfully onto the subject property. In preparing for the move, Antwerpen learned that the Baltimore County zoning office took the position that a used-automobile dealership was not permitted in the B.M. zone. Antwerpen took a contrary position, and on August 2, 2001, Antwerpen filed a petition for special hearing with the Baltimore County Department of Permits and Development Management.

The request for a "Special Hearing" was made pursuant to Section 500.7 of the zoning regulations of Baltimore County. Antwerpen asked for a determination of whether it was permissible in a B.M. zone to use the land for "[t]he sale of used automobiles as a principal use in an automobile sales room and adjoining outdoor sales area...."

At the time the petition for special hearing was filed, Baltimore County Zoning Regulation (BCZR) Section 233.2 provided that the following was a permitted use in a B.M. zone:

Automobile sales room and adjoining outdoor sales area, provided that dismantled or junk cars unfit for operation on the highways shall not be stored outdoors.

In the B.R. (Business Roadside) zone, which allows more intense uses than the B.M. zone, one can operate "a used automobile vehicle outdoor sales area, separated from a sales agency building," only if a special exception is granted. *See* Section 236.4 of the BCZR.[1] Reading Sections 233.2 and 236.4 in tandem, the Baltimore County zoning office had, for a number of years prior to Antwerpen's petition for a special hearing, taken the position that Section 233.2 permitted sales of new but not used automobiles in a B.M. zone.

---

1. The Baltimore County Council created three business zones-Business Light (B.L.), B.M., and B.R. The least intense is the B.L. zone, and the most intense is the B.R. zone. The B.M. zone is medium density. The B.R. zone allows all the uses permitted in the B.M. zone but not vice-versa.

The Baltimore County Zoning Commissioner's policy manual, which is authorized by Section 26–135 of the BCZR, permits the director of the zoning office to promulgate rules and policies as a guide to the application of zoning regulations. The policy manual includes a chart of permissible uses in various zones. That chart indicates that the use of property in a B.M. zone for used car sales is prohibited.

On September 4, 2001, the Baltimore County Council passed Bill 71–01. The purpose of that bill was to make it clear "that *new* car sales are permitted as of right in the B.M. zone but that used-car outdoor sales areas were permitted in the B.M. zone only by special exceptions as part of a commercial planned unit development ['PUD']. . . ." Bill 71–01 was to take effect on October 19, 2001.

The explanatory note accompanying Bill 71–01 reads as follows:

Bill 71–01 proposes to amend the Zoning Regulations in order to clarify the types of automobile sales facilities permitted in the business zones of the County.

Under current law, new automobile sales rooms are permitted in the BM (Business, Major) zones of the County as a matter of right, while used car sales are permitted by special exception in the BR (Business, Roadside) zones of the County. A recent decision by the County Board of Appeals has caused some confusion in this area. The Board has recently held that since there is no definition of the term "automobile sales room" in the Zoning Regulations, both new and used car facilities are permitted as a matter of right in the BM zones.

Bill 71–01 proposes to amend Section 233.2 of the Zoning Regulations (uses permitted by right in the BM zones of the County) by clarifying that *new* automobile sales facilities are permitted as a matter of right in the BM zones of the County.

The bill also amends Section 440.4.C. in order to permit a used motor vehicle outdoor sales area (currently permitted by special exception only in the BR zones) in the BM zones

by special exception if it is part of a commercial planned unit development (PUD–C).

On September 11, 2001, which was exactly one week after Bill 71–01 was enacted, a hearing was held before Deputy Zoning Commissioner Timothy M. Kotroco to consider Antwerpen's request for hearing. The fact that the Baltimore County Council had passed Bill 71–01 was not brought to the deputy zoning commissioner's attention at the hearing. This lapse was possibly due to the absence of any opponents to Antwerpen's request.

On September 18, 2001, the deputy zoning commissioner filed a four-page "finding of fact and conclusion of law" in which he resolved the issue raised in the request for hearing. He said, in material part, as follows:

> Historically, the Zoning Office (the Department of Permits and Development Management {DPDM}), has always construed ... section [233.2] to be limited to only new vehicles. That construction is based on a use designated in Section 236.4 of the B.C.Z.R., which defines the special exceptions permitted in the B.R. zones. Therein, a designated use is "a used motor vehicle outdoor area, separated from a sales agency building." Since this use is identified in the B.C.Z.R., the Zoning Office has opined that, when these two uses are considered in conjunction with one another, that the use designated in Section 233.2 (i.e.[,] automobile sales room and adjoining outdoor sales area ... ) is for new cars, only. *The reasoning is that because the use defined in Section 236.4 designated used vehicles, the absence of such language in Section 233.2 must mean that the vehicles to be sold are new.*

To say the least, this interpretation endorsed by DPDM is strained. Not only does the use designated in Section 233.2 not utilize either the words "new" or "used," but the uses described in Sections 233.2 and 236.4 above are clearly different. That is, certain restrictions on the use described in Section 236.4 relate only to an outdoor lot, without a

building, whereas the use defined in Section 233.2 clearly requires some structure.

Complicating the issue is the definition of "service garage," as set out in Section 101 of the B.C.Z.R. The language therein defines that use as "a garage, other than a residential garage, where motor driven vehicles are stored, equipped for operation, repaired or kept for remuneration, hire or *sale.*" ( [E]mphasis added[.] ) Thus, sale of motor driven vehicles is a primary component of the service garage use. Service garages are permitted by right in the B.M. zone.

In my judgment, the proper approach is to consider each petition on a case by case basis. In reviewing the record of this case, it is my judgment that the proposed use should be permitted.

(Emphasis added.)

The Office of People's Counsel for Baltimore County filed, on September 28, 2001, a notice of appeal from the ruling by the deputy commissioner. Also on September 28, 2001, the State of Maryland issued a license to Prestige to sell used automobiles on the subject property. Twelve days later, on October 10, 2001, Prestige began using the subject property for the sale of used cars.[2]

While the matter was pending before the Board of Appeals ("the Board"), the People's Counsel filed a motion to dismiss Antwerpen's petition for special hearing. The People's Counsel pointed out that (1) Antwerpen's appeal to the Board was *de novo;* (2) Bill 71–01 allowed used-car sales in a B.M. zone "only by a special exception and under [the] Planned Unit Development—Commercial (PUD–C)" zone; (3) Bill 71–01

---

**2.** The October 10, 2001, date was obtained from a letter found in the record extract from the Maryland Department of Motor Vehicles addressed to Antwerpen's counsel. The letter reads:

Pursuant to our telephone conversation regarding 3636 LLC T/A Prestige Imports (U4849), our records show the above dealership went into business on October 10, 2001. The zoning form was approved on September 25, 2001.

became effective on October 19, 2001; (4) Antwerpen had obtained no special exception; and (5) under principles set forth in *Powell v. Calvert County,* 368 Md. 400, 795 A.2d 96 (2002), the Board was required to apply the law as it presently stands. Penultimately, movant asserted that applying that current law, Antwerpen had no right to operate a used-car lot on the subject property without a special exception and therefore the request for special hearing should be dismissed.

At the hearing before the Board, counsel for Antwerpen argued: (1) at the time the petition for hearing was filed, operating a used-car lot in a B.M. zone was legal; (2) in the request for a special hearing, Antwerpen simply wanted the deputy zoning commissioner to confirm the fact that he had a right to operate the used-car lot in the B.M. zone; and (3) at the time Bill 71–01 went into effect, Antwerpen had already established a nonconforming use. Counsel for Antwerpen summarized his argument as follows:

> What we were doing in this particular case was permitted as of right in a B.M. zone, and therefore, when the amendment [Bill 71–01] kicked in in this case, all it changed was it turned us from being a conforming use under the then-present zoning regulations to a non-conforming use under the present zoning regulations....

In other words, Antwerpen contended that it had vested rights to continue using the property for used-car sales as of October 19, 2001, the effective date of the statute.

In its opinion, the Board said, in pertinent part:

> In support of its position, [Antwerpen] cite[s], among other cases, a case decided by this Board *In The Matter Of The Application of G.C. & R.L., Ltd.,* Case No. 99–324–SPH, in which this Board held that a used car operation was allowed in a B.M. zone since the language of the [then] current legislation did not appear to restrict the automobile dealership to a new car operation. That case was appealed by People's Counsel to the Circuit Court for Baltimore County in Civil Action No. 3–C–00–3846. The [c]ourt returned the case to the Board for clarification. The Board

affirmed its earlier decision on March 25, 2001, and the case is back before the [c]ircuit [c]ourt.

\* \* \*

Petitioners contend that they never sought a special exception but only a declaration by the [d]eputy [z]oning [c]ommissioner that what they were proposing to do was in conformance with the law. They contend that as long as the Zoning Commissioner was right, that is, that the operation of a used automobile facility was in conformity with the zoning regulations as of the time that the use began, Antwerpen's use is permissible, even after the amendment to the zoning regulations, because it became a lawful nonconforming use. They cite *Mayor and City Council of Baltimore v. Dembo, Inc.,* 123 Md.App. 527, 531[, 719 A.2d 1007] [ (1998) ], and *Lone v. Montgomery County,* 85 Md. App. 477, 496[, 584 A.2d 142] (1991). These cases stand for the proposition that "a lawful nonconforming use is established if a property owner can demonstrate that before and at the time of the adoption of the zoning ordinance, he was using his land in a then-lawful manner for a use which by later legislation became non-permitted."

\* \* \*

### Decision

... While the Board did interpret § 233.2 of the BCZR to allow the operation of a used car dealership in a B.M. zone in the *G.D. & R.L.* case (Case No. 99–324–SPH), that decision was contrary to a long-standing interpretation of [c]ounty agencies. In addition, the decision was appealed by People's Counsel to the Circuit Court for Baltimore County and said appeal is still pending; therefore, the decision cannot be interpreted as being the law in effect at the time that the [p]etitioners sought clarification before the Zoning Commissioner. *It is the Board's understanding that the building at 36 Brenbrook Drive is still unoccupied, and therefore the [p]etitioners cannot claim a nonconform-*

*ing use since no utilization has been made of the building at this time for used car sales.* However, even if the used car operation had been begun at the property, the Board would still find that the [p]etitioners acted at their own risk, and that, because of the pending appeal, they had no vested right in the operation of a used car dealership at that site.

The Board relies on the decision of Judge Cathell in the *Powell* case (*supra*) and finds that the new law effective October 19, 2001, in which the Council amended § 233.3 and § 440.4, is controlling. The appeal of Deputy Zoning Commissioner Kotroco's decision by the People's Counsel brought the matter before the Board in a *de novo* posture. His ruling could not be effective pending the decision by this Board.

(Emphasis added.)

There was no support in the record for the Board's "understanding" that Antwerpen's building at 36 Brenbrook Drive (the subject property) was "still unoccupied." Moreover, the People's Counsel, in his argument to the Board, never even suggested that Antwerpen had not operated a used-car lot on the premises between the time of the deputy zoning commissioner's decision and October 19, 2001, the effective date of Bill 71–01.

Antwerpen filed, in the Circuit Court for Baltimore County, a petition for judicial review of the Board's decision. The circuit court affirmed the Board's decision to grant People's Counsel's motion to dismiss. It did so on the basis that (1) Antwerpen had failed to show a nonconforming use and (2) therefore, because a reviewing court must apply the law in effect at the time of its decision, Antwerpen had no right to use the land in question for used-car sales at any time after October 19, 2001.

This timely appeal followed.

## II. *ANALYSIS*

■ Antwerpen first argues that the circuit court erred when it affirmed the Board's grant of the motion to dismiss on

the grounds that Antwerpen was not operating an automobile dealership on the subject property prior to October 19, 2001. In support of that argument, Antwerpen points out that the Board "ruled only on People's Counsel's motion to dismiss," and therefore there was "never any evidence heard by the [Board] at the hearing on the motion to dismiss." Appellants also point out, accurately, that their counsel clearly proffered to the Board that a used-car dealership was being operated on the subject property prior to the effective date of Bill 71–01.

We agree with Antwerpen that this case should not have been dismissed on the grounds that Antwerpen never utilized the property for used-car sales before October 19, 2001.

Prior to listening to argument by counsel at the hearing, the Board made it clear that it would consider only legal issues, i.e., those issues raised by the People's Counsel in its motion to dismiss. And, as mentioned *supra,* People's Counsel argued that the case should be dismissed for two intertwined reasons, *viz:* (1) Antwerpen has no vested right to use the property for used-car sales because the deputy zoning commissioner's ruling was never final inasmuch as it was the subject of a *de novo* appeal, and (2) the Board was required to apply the provisions of Bill No. 71–01, which was the law that was in effect at the time the Board made its ruling. Therefore, Antwerpen had no reason to put on evidence showing a pre-October 19, 2001, non-conforming use.[3]

For the foregoing reasons, we shall assume, *arguendo,* that Antwerpen's counsel accurately represented to the Board that his client operated a used-car lot on the property prior to October 19, 2001. Therefore, the issue to be decided becomes: Did the Board err [4] when it ruled, in the alternative,

**3.** In his brief filed in this Court, People's Counsel does not contend that this case can be decided based on the issue of whether Antwerpen proved that the property was used for the sale of used cars prior to the effective date of Bill 71–01.

**4.** We review the decision of the agency, not the decision of the circuit court. *Abbey v. University of Maryland,* 126 Md.App. 46, 53, 727 A.2d

that appellants did not obtain vested rights in the property because the grant of the relief prayed for in the special hearing was on appeal as of the date appellants commenced using the property for the sale of used cars?

The parties to this appeal agree that (1) the Board, when it reviewed the deputy zoning commissioner's decision, was obliged to follow the dictates of the Baltimore County Zoning Regulations (BCZR) that were in effect at the date of the hearing before the Board, and (2) as of the date of the hearing before the Board, Bill 71-01 was in effect. Where the parties part company concerns a narrow issue, *viz:* By operating a used-car lot on the premises between October 10 and October 19, 2001, did Antwerpen acquire a vested right to continue operating a used-car lot there? Appellants request that we answer that question in the affirmative. More specifically, appellants claim that by using the property for approximately nine days prior to the effective date of Bill No. 71-01, they obtained a non-conforming use.

## The Law Governing Nonconforming Use

One of the earliest Maryland cases discussing the right of a property owner with a legal use to continue that use after passage of a new zoning ordinance making the use non-permissible is *Amereihn v. Kotras,* 194 Md. 591[, 71 A.2d 865] ... (1950). In *Amereihn,* the Court of Appeals explained the rationale for recognizing nonconforming uses as follows:

If a property is used for a factory, and thereafter the neighborhood in which it is located is zoned residential, if such regulations applied to the factory it would cease to exist, and the zoning regulation would have the effect of confiscating such property and destroying a vested right therein of the owner. Manifestly this cannot be done, because it would amount to a confiscation of the property,

406 (1999); *Ahalt v. Montgomery County,* 113 Md.App. 14, 20, 686 A.2d 683 (1996).

and nonconforming use is a vested right and entitled to constitutional protection.

*Id.* at 601[, 71 A.2d 865].... Since 1950, Maryland courts have developed and refined the law regarding the respective rights of zoning authorities and owners of properties qualifying as nonconforming uses. *See, e.g., Board of Zoning Appeals v. Meyer,* 207 Md. 389, 114 A.2d 626 (1955) (holding that when a property owner at time of adoption of last comprehensive zoning was using land for use which by new legislative action became non-permitted, the owner has a lawful nonconforming use); *County Comm'rs v. Zent,* 86 Md.App. 745, 587 A.2d 1205 (1991) (explaining permissible intensification of nonconforming use as compared to impermissible "extension"); *McKemy v. Baltimore County,* 39 Md.App. 257, 269–70, 385 A.2d 96 (1978) (defining four factors to determine whether current activity is within the scope of nonconforming use).

*Mayor & City Council of Baltimore v. Dembo,* 123 Md.App. 527, 537–38, 719 A.2d 1007 (1998).

Appellee contends that appellants did not obtain a vested right to use the property as a used-car lot at any time prior to October 19, 2001, because (1) appellants needed zoning approval to operate a used-car lot on the property; (2) although they obtained approval of the use from the deputy zoning commissioner prior to October 19, 2001, the zoning commissioner's decision was on appeal as of the effective date of Bill 71–01; and (3) therefore the rule enunciated in *Powell v. Calvert County,* 368 Md. 400, 795 A.2d 96 (2002), was applicable.

In *Powell,* one James Graner (respondent) owned a fourteen-acre parcel of land on which he operated an excavation business. *Id.* at 402–03, 795 A.2d 96. Graner began to store construction equipment and materials (such as topsoil and gravel) on the property. *Id.* It was thereafter determined that Graner needed a special exception to store such material legally. *Id.* Graner applied for and obtained a special exception from the Calvert County Board of Appeals to allow him to store equipment and material on the premises. *Id.* But

Graner's neighbors filed a petition for judicial review of the Board's grant of the special exception. *Id.* at 404, 795 A.2d 96. The Circuit Court for Calvert County affirmed the Board's grant of the special exception. An appeal was then filed to this Court. *Id.* at 405, 795 A.2d 96. While the appeal was pending, a Calvert County zoning ordinance was amended so as to disallow the use of the property for "outdoor storage in connection with commercial and/or industrial uses," including the storage of "machinery and equipment in connection with excavation and/or contracting business." *Id.* at 405, 795 A.2d 96.

A panel of this Court, in an unreported decision, remanded the case to the Board because the state of the record prevented the panel from deciding whether there was substantial evidence to support the grant of the special exception. *Id.* On remand, the Board once again approved the special exception, but, in doing so, failed to consider the change in the zoning ordinance. *Id.* at 406, 795 A.2d 96. The circuit court found that, although there had been a change in the applicable law, which meant that the special exception should not have been granted, the respondent nevertheless had obtained vested rights, which protected him from the change in the law. *Id.* The circuit court, however, remanded the case to the Board, due to the Board's (alleged) failure to properly consider whether a condition to the grant of the special exception had been met. *Id.* Petitioners, who were neighbors of the respondent, appealed to this Court. *Id.* at 407, 795 A.2d 96. We affirmed the Board's decision, holding that, because the special exception was validly granted prior to the effective date of the statute disallowing a special exception in like cases, the respondent had obtained vested rights to the use of the property in conformance with the rights conferred by the special exception. *Powell v. Calvert County,* 137 Md.App. 425, 440–42, 768 A.2d 750 (2001).

The Court of Appeals reversed our decision, saying:

We hold that respondent did not obtain a vested right to store his materials on his property because he never ob-

tained *a final, valid special exception,* as he did not obtain a special exception that was free of all pending litigation. *Powell,* 368 Md. at 416, 795 A.2d 96 (emphasis added).

In support of the foregoing holding, the Court of Appeals said:

The Court of Special Appeals opines that the special exception granted to petitioner by the Board was never declared "unlawful or invalid." *It makes no difference. It was still in litigation.* Even if the special exception was never "declared" invalid, it was never a final valid special exception, which would qualify respondent to begin to vest rights in a zoning approval. As stated, *supra,* upon the Board's original granting of the special exception to respondent, petitioners sought judicial review. Therefore, the "valid permit" never took final effect because the litigation dealing with the special exception had not reached its final conclusion. . . .

*Id.* at 415, 795 A.2d 96 (emphasis added).

Later in *Powell,* the Court made the following points:

*We have held that a vested right does not come into being until the completion of any litigation involving the zoning ordinance from which the vested right is claimed to have originated.* In *Ross v. Montgomery County,* 252 Md. 497, 250 A.2d 635 (1969), we stated that:

"The appellants have also interposed, as working in their favor, the theory of vested rights. Their contention being that, because of the high price they paid for the land based on its then authorized use for an apartment hotel, their expenditure for architect's fees and the cost incurred in site preparation, the zoning regulations which the County seeks to impose have been rendered inoperative.

In *Mandel v. Bd. of County Comm'rs of Howard County,* 238 Md. 208, 208 A.2d 710 (1965), a change in zoning regulations was enacted while litigation was pending in respect to the use of the appellants' property under the former zoning regulations. The appellants contended that

this violated their constitutional rights. Judge Oppenheimer, writing the opinion for this Court stated:

' * * * this case is to be determined under the law as it now exists, that the appellants had not secured a final decree establishing their rights to use their properties for the use permitted under the former classification, that they had no vested rights, and that the change in the regulations is not invalid because it eliminates the proposed use.' *Id.* at 215, 208 A.2d 710.

The Court in *Mandel* aptly termed the right acquired under the permit as 'inchoate' and followed the rationale of this Court in *Yorkdale v. Powell*, 237 Md. 121, 205 A.2d 269 (1964), wherein Judge Hammond (now Chief Judge), speaking for the Court said:

'It would seem to follow from the decisions in *Banner* [*v. Home Sales Co. D.*, 201 Md. 425, 94 A.2d 264 (1953) ], *Lake Falls* [*Ass'n v. Board of Zoning Appeals of Baltimore County*, 209 Md. 561, 121 A.2d 809 (1956) ] and *Grau* [*v. Board of Zoning Appeals of Baltimore County*, 210 Md. 19, 122 A.2d 824 (1956),] that an applicant for rezoning to a more intense use of his property, who has been successful before the zoning authorities and the circuit court does not acquire a vested or substantive right which may not be wiped out by legislation which takes effect during the pendency in this Court of the appeal from the sections below.' *Id.* at 126, 205 A.2d 269."

*Id.* at 503, 250 A.2d at 638–39.

*Id.* at 412–13, 795 A.2d 96 (emphasis added).

In the case *sub judice*, the Board rejected appellants' vested rights argument based on the principles enunciated by the Court of Appeals in *Powell*. The Board took the position that appellants obtained no vested rights because, at the time appellants commenced using the property to sell used cars, the grant of the relief prayed for in the special hearing was on appeal.

Appellants contend that *Powell* is inapposite because, unlike *Powell,* here the landowner did not need the decision reached after a special hearing to start selling used cars on the property. This is true, according to appellants, because on the date they commenced selling used cars on the premises, Baltimore County zoning regulations permitted such a use. In other words, appellants take the position that in this case, unlike *Powell* and its progeny, no permission from any zoning official was needed to start selling used cars on the subject property.

Consideration of the validity of the foregoing argument makes it necessary to ask why appellants bothered to request a special hearing to decide their rights if, as they now contend, they had a right to start selling used cars without permission of the zoning office. Appellants answer that question by asserting: (1) to sell used cars they needed a license issued by the Maryland Department of Transportation ("DOT"); (2) to obtain the DOT license, they needed the zoning office to affirm that the property was zoned to allow the sale of used cars; (3) the Baltimore County zoning office would not so affirm because it held the view that used-car sales were prohibited in the B.M. zone; and (4) therefore, appellants needed the zoning commissioner to declare appellants' rights.

A request for special hearing is, in legal effect, a request for a declaratory judgment. The appellants asked the zoning commissioner to declare that they had a right to operate a used-car lot on the property. The appellants needed this declaration not only to get a DOT license to sell used cars, but also to obtain an occupancy permit. Without a favorable decision on the request for special hearing, appellants could have obtained neither a license nor a permit. Therefore, appellants *did* need the zoning office's approval to sell used cars on the property. But, just as rights could not come into being while the grant of a request for special exception is on appeal, no right can be said to have vested that emanated from the deputy zoning commissioner's declaratory judgment, until that judgment becomes final.

We agree with the Board that *Powell* controls this case. In *Powell,* the Court of Appeals gave its imprimatur to the general rule that "vested right[s][do] not come into being until the completion of any litigation involving the zoning ordinance from which the vested right is claimed to have originated." 368 Md. at 412, 795 A.2d 96. Here, the vested rights claimed by appellants were based on Section 233.2, which was amended prior to the completion of the subject litigation. At the time appellants claimed their rights vested (October 10, 2001, the date appellants commenced selling used cars on the premises), the decision of the zoning examiner had already been appealed. Thus, appellants knew that the favorable ruling by the deputy zoning commissioner, which they used to get a DOT license and an occupancy permit, was subject to reversal in a *de novo* appeal. By the time the *de novo* appeal was heard, the amended ordinance was in effect. Because the Board was required to apply the law in effect on the date it heard the case, *Mandel v. Board of County Comm'rs of Howard County,* 238 Md. 208, 215, 208 A.2d 710 (1965), the Board had no choice but to reject the zoning commissioner's conclusion that used-car sales were permitted on the property.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**